Floyd ENGLAND (Plaintiff), Respondent,

v.

George SALAMON, Executor of the Estate of E. G. Salamon, Deceased (Defendant), Appellant.

No. 30222.

St. Louis Court of Appeals.

Missouri.

June 16, 1959.

Dearing, Richeson & Weier, H. L. C. Weier, Hillsboro, for appellant.

Ennis & Pannell, William L. Pannell, Festus, for respondent.

ANDERSON, Judge.

This is an action for damages for personal injuries sustained by plaintiff as the result of a fall on premises owned by E. G. Salamon. These premises were known as 2317 South Broadway in the City of St. Louis. The suit was brought against defendant, George Salamon, executor of the estate of E. G. Salamon, deceased. There was a verdict and judgment for plaintiff in the sum of $2,000, from which judgment defendant has appealed.

The accident occurred in the back yard of said premises. This back yard was used in common by the tenants in said building and the customers of a restaurant located on the first floor thereof. Just prior to the accident plaintiff and his friend, John Howard, had eaten dinner in the restaurant and at the time of the accident were proceeding across the back yard toward an area thereof where plaintiff had parked his truck. The evidence revealed that plaintiff, when very young, had been the victim of polio and was compelled to walk with the aid of crutches. On the occasion in question, and while walking across the back yard, one of his crutches suddenly sank beneath the surface of the ground causing him to fall and fracture his leg. Later, investigation revealed that the crutch end had pierced a quarter inch piece of plywood which had been placed over a four inch drain tile and which, in turn, had been covered over with dirt. The dirt was about one-half inch in depth. The drain or hole was located in the middle of the yard and about five feet from a sewer opening or manhole. The sewer opening or manhole was twelve inches in diameter. The yard at this point sloped toward the manhole. The hole in question, according to the photographs introduced, was located on this slope and, according to the evidence, was about eight inches higher than the sewer opening. Both the hole and sewer opening were in an area paved with brick. This brick pavement did not cover the entire back yard but was several feet in width and extended from steps to the upstairs apartments to the rear of the lot, where there was a concrete area used for parking purposes by customers of the restaurant. The brick paved area was referred to by some of the witnesses as a "walk way." The rest of the back yard was gravel.

Without exception, all of the witnesses testifying on behalf of either party stated that prior to the accident they had not known of the existence of this hole. Both plaintiff and defendant gave like testimony. Plaintiff's witness John Howard testified

that, although he had patronized the restaurant and had been going back and forth through the back yard for approximately two years, he had never seen the hole in question. Howard also testified that after a rain water would stand in the area where the hole was located and "then it seeped through * * * the big drain stood, I guess, eight inches lower than the other one, water would stand there for a while and would go on down."

Plaintiff, testifying in his own behalf, stated he had never seen the hole in the yard although he had eaten at the restaurant several times over a considerable period of time, probably two years. In entering and leaving the restaurant he usually used the back door. He stated that the hole could not be seen. Harold Simmons, another witness for plaintiff, testified he had visited the restaurant frequently but had never seen the hole although he came in and out of the building through the back yard.

Plaintiff introduced the deposition (taken on June 27, 1957) of E. G. Salamon, the owner of the premises at the time of the accident. In this deposition Mr. Salamon testified he had never seen the hole until after plaintiff had fallen, when he dug it out the next day after the accident. He had purchased the property about five or six years previously. The restaurant was operated by a sub-lessee of Salamon's lessee. The four upstairs apartments were rented to tenants on a month to month basis. Salamon visited the premises once or twice a month during the time he owned the property.

At the conclusion of plaintiff's case defendant filed a motion for a directed verdict, which was overruled. Defendant then called three witnesses: George Salamon, a son of E. G. Salamon; Mary Simmons, who ran the restaurant; and Joseph Salamon, another son of E. G. Salamon. George Salamon, the executor, stated he had been in the back yard prior to May 19, 1954, and had never seen the small hole. Mary Simmons stated she had operated the restau-

rant from 1952, and during that time had never seen the hole in the back yard where plaintiff had fallen. Joseph Salamon testified he had done repair work at this building for his father and never saw the hole.

At the close of the whole case defendant filed a motion for a directed verdict and, after a verdict for plaintiff, filed a motion for judgment in accordance with said motion for directed verdict, or, in the alternative, for a new trial. The trial court took no action on this motion within the ninety days allowed by law. Thereafter, and within due time, defendant filed a notice of appeal.

Appellant contends that the trial court erred in overruling his motions for a directed verdict, and in failing to sustain his after-trial motion. In support of this contention it is urged there was no evidence that E. G. Salamon, owner of the real estate where the injury occurred, had knowledge, either actual or constructive, prior to plaintiff's injury, of the existence of the hole in question. Respondent takes the position that, although there was no actual knowledge shown, the evidence was sufficient to authorize a finding that the lessor had constructive knowledge of the latent defect which caused plaintiff's injury, and that the judgment should therefore be affirmed.

 A landowner has a duty to exercise reasonable care to discover defects or dangerous conditions on his premises, and will be charged with knowledge of such defects which he could have discovered in the exercise of ordinary care. Golden v. National Utilities Co., 356 Mo. 84, 201 S. W.2d 292; Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91; Weed v. American Car & Foundry Co., 322 Mo. 137, 14 S.W.2d 652; 38 Am.Jur., Negligence, § 24, p. 667; 65 C.J.S. Negligence § 51, p. 545. However, the landowner will not be held liable for hidden defects which would not have been discovered by a reasonably careful inspection. 65 C.J.S. Negligence §

51, p. 547. His duty is one of ordinary care. He is not an insurer of the safety of invitees who come upon the premises. Nor should he be held liable for defects which an investigation might reveal unless the situation suggests an investigation. The facts in evidence should indicate to a reasonably prudent man the likelihood of the existence of some hidden danger to persons lawfully upon the premises. One from whom ordinary care is demanded is bound to guard only against those occurrences which can reasonably be anticipated by an ordinarily prudent man. 38 Am.Jur., Negligence, Sec. 24.

The fact that water, after rains, had been seen standing in the area where the hole was located, which water would gradually seep away, is relied upon by respondent as a circumstance calling for an investigation which would have disclosed this latent defect on the premises. The hole was located in an area in which there was also a manhole with a grated cover. It also appears from the photographs in evidence that the manhole cover was not flush with the surface of the ground. Under these conditions, water after a rain would naturally accumulate in this depressed area and would later seep away. It would not be indicative of a latent defect of the character here involved so as to call for an investigation.

Respondent also says that it is his position "that the evidence concerning the length of time the areaway remained unchanged, the length of time the areaway remained under the control and dominion of the defendant, and the length of time the hole remained covered by mud and dirt, presented a question of fact for the jury to determine if the landlord had exercised ordinary care or reasonable care to discover the hidden defect."

Length of time during which a peril has existed and has been visible may justify a finding that the person responsible for its existence had notice thereof. This principle is well established by the authorities upon which respondent relies. However, the case at bar is not one involving a patent defect, but a hidden one. In such cases, mere lapse of time sufficient to permit an investigation is not sufficient to charge one with notice of the defect. There must be, in addition, some facts which would indicate to a reasonably prudent man the probable existence of the peril. No such evidence appears in the case at bar. In our judgment, there was no negligence shown, and the trial court should have directed a verdict for the defendant. The judgment is reversed.

WOLFE, P. J., and RUDDY, J., concur.