GENELL, INC. Petitioner
v.
RORY FLYNN ET AL, Respondents

No. A-8592.  Decided June 20, 1962
Rehearing Denied July 25, 1962
358 S.W. 2d 543

*Bailey & Williams,* Dallas, for petitioner.

*Woodruff, Hill & Boder,* Dallas, for respondents.

ASSOCIATE JUSTICE SMITH delivered the opinion of the Court.

Charles H. Flynn, individually, and in behalf of his seven year old daughter, Rory Flynn, filed this suit for damages against Genell, Inc., a corporation, and Southern Oak Apartments, Inc., a corporation, alleging injuries sustained by Rory Flynn on June 21, 1959, as the result of the negligence of both corporations. Southern Oak Apartments, Inc., was later dismissed from the suit and the case proceeded to trial as between the named plaintiffs and the defendant, Genell, Inc. For convenience the parties will hereinafter be designated either as plaintiffs, defendant, or by name.

The defendant was the manager and operator of a group of apartments (504 units) in the City of Dallas, known as Park Forest Apartments. Rory Flynn and her parents were living in one of the units of Park Forest Apartments at the time of the alleged accident.

The facts are stated in plaintiffs' and defendant's briefs. The pertinent facts are these: Rory Flynn, at the time of the accident, was seven years of age and was a child of above average intelligence. On June 21, 1959, she had been playing in the general area of the apartment where she lived, but sometime that afternoon decided that she would like to go play with a friend, Pamela McCullum, who lived upstairs in a unit apart from that in which Rory Flynn and her parents lived. Pamela was older than Rory. When Rory was informed by Pamela's mother that her daughter could not play, Rory left the Pamela McCullum apartment unit and returned downstairs by walking down the same stairs, which she had gone up, holding on to the rail and walking fast. When she reached the second from the bottom stair *she stopped and leaned over toward the door* to push on the door in order to make her exit. She testified that *she intended to push on the wooden part of the door but as she leaned over she missed* (the wooden part) *and her arms went through the glass.* The record shows that the injuries she sustained were confined to the arms and were caused by the broken glass. The door Rory was using was the back door to the Pamela McCullum apartment. Rory's mother testified that she had been through this particular back door a few times and that the door was "awfully" heavy and difficult for her to open. The father, Charles Flynn, had never had occasion to use the door prior to the accident, but, after the injury, he had tested the door and found it was hard to push open. Rory testified to facts showing that she was aware of the fact that the door which she pushed open was difficult to open. She stated that the door would not close entirely and could be pushed open without the necessity of turning the door knob. Rory

had used this method before in opening this particular door. In fact, she had been taught by her friend, Pamela, how to open the door in this manner, and she testified: "We just did it because it was easier to open that way." She testified further that on previous occasions when she opened the door she had not pushed upon the glass. Rory and her parents testified that they did not know anything about the strength of glass, had made no inquiry about glass, and as laymen could not look at the glass in the door and tell its relative strength.

Carl O'Neal, a structural engineer, testified in regard to single strength glass. He further testified that the *door closer* in the condition that it was in would not latch the door; it came almost closed but it would not latch; that the door was quite hard to open; that it was more than normally hard to open and he further testified that there was definitely something wrong with the door closer; that a *door closer* which failed to latch the door is not functioning properly.

The witness, William C. Willis, who designed a replica, which was introduced in evidence, of the door and the stairs leading to it, testified that the landing was twenty-five inches in width, measuring from the nose of the first tread to the door, and the dimensions of the stairs were "seven and a half inch risers and eleven and a half inch treads".

The manager of the apartment, Don Carter, testified that all the back doors were about alike and what he would term heavy doors; that it was his duty to replace broken glass or have it done and that on Monday, following the Flynn accident which occurred on Sunday, he inspected the door and found that the glass had been replaced in the door. He further testified that the *door closers* were placed on the doors in early 1955 when the apartments were constructed; that he had no inspection of the *door closers* made to see if they were working properly. Carter testified that no complaints were made as to the *door closers* on any of the doors and that he did not inspect them; that no complaint had been made as to this particular door closer and that he did not know whether this particular door would close or not. Much of Carter's testimony, both on cross and redirect examination, was in answer to questions pertaining to the type of glass in the doors and the putty holding the glass in place.

The Flynns alleged a number of acts of commission and omission constituting negligence on the part of Genell, Inc., and that each act was a proximate cause of Rory Flynn's injuries.

However, only three of such acts were submitted to the jury for determination. The jury, in answer to the special issues involving the grounds of negligence inquired about, found that (1) Genell, Inc. maintained a glass that was loose in the frame of the door in question, but that such act *was not* negligence; (2) that Genell, Inc. maintained single strength glass in the door in question and that such act was *negligence,* but *was not a proximate cause* of the accident and resulting injuries sustained by Rory Flynn; (3) that Genell, Inc., on the occasion in question, maintained an *adjustment on the door closer* that made the door in question difficult to open and that such conduct was negligence and a proximate cause of the injuries sustained by Rory Flynn. The jury made these additional findings: (a) that Rory Flynn was not negligent in any manner proximately causing the accident; and (b) that the occurrence in question was not the result of an unavoidable accident.

Based upon the jury finding that the damages involved were proximately caused by Genell, Inc. maintaining a door closer upon the door in question in such a way as to make the door difficult to open, and the jury findings awarding damages to each of the Flynns, the trial court entered judgment for the Flynns. The judgment has been affirmed by the Court of Civil Appeals. 348 S.W. 2d 196.

This appeal presents four basic questions, either of which, if sustained, would require a reversal of the judgment of the trial court and the Court of Civil Appeals and the rendition of judgment in favor of Genell, Inc. Briefly stated, the questions are these:

(1)   Was there a duty which devolved upon Genell, Inc. to change the condition found by the jury to have[1] existed in its answer to special issue number four or to alter the premises so as to do away with the condition found by the jury to have existed on June 21, 1959?

(2)   Was it foreseeable on the part of Genell, Inc. that the damages alleged to have resulted to the Flynns and found by the jury would have occurred as a consequence of its permitting the existence of the condition found by the jury in answer to special issue number four?

---

1. Do you find from a preponderance of the evidence that on the occasion in question the defendant Genell, Inc., maintained an adjustment on the door closer that made the door in question difficult to open?

(3) Was Rory Flynn guilty of contributory negligence as a matter of law in attempting to open the door as she did; and

(4) Did Rory Flynn assume the risk involved in utilizing the door in the condition it was in as found by the jury, and did Rory's conduct in this regard invoke the doctrine of volenti non fit injuria so as to preclude a recovery against Genell, Inc. as a matter of law?

We have concluded that as a matter of law the injury sustained by Rory Flynn as a result of the fact that the adjustment on the door closer made the door in question difficult to open was not foreseeable on the part of Genell, Inc. Therefore, we pretermit a discussion of the question as to whether Rory Flynn was guilty of contributory negligence as a matter of law, and the question as to whether Rory Flynn as a matter of law assumed the risk involved in utilizing the door in the manner heretofore described.

Rory Flynn occupies the status of an invitee. Genell, Inc. is in the same status as that of a landowner in so far as duty toward an invitee is concerned. In some of the reported cases, it is said that the duty of the landowner to an invitee is to exercise ordinary care to keep the premises in a reasonably safe condition so that the invitee will not be injured. See Carlisle v. J. Weingarten, Inc., 137 Texas 220, 152 S.W. 2d 1073, 1074; Walgreen-Texas Co. v. Shivers, 137 Texas 493, 154 S.W. 2d 625, 628, 629; Renfro Drug Co. v. Lewis, 149 Texas 507, 235 S.W. 2d 609, 615. Where the duty to keep premises in a safe condition is imposed on a person in control of them, this duty may include the duty to inspect the premises to discover dangerous conditions. See R. E. Cox Dry Goods Co. v. Kellog, Texas Civ. App., 145 S.W. 2d 675, wr. ref. (1940); Smith v. Henger, 148 Texas 465, 226 S.W. 2d 425, 20 A.L.R. 853 (1950).

Genell admits that no inspection of the door was made after the building was constructed in 1955, but argues that the Court of Civil Appeals erroneously assumed that there existed on the part of Genell, Inc. a duty to change the adjustment on the door closer. Genell, Inc. contends that the duty to keep the premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, or snares not known to the invitee and would not be observed by him in the exercise of ordinary care, citing such cases as A. C. Burton, Inc. v. Stasny, Texas Civ. App., 223 S.W. 2d 310 (1949), wr. ref.; C. W. Craw-

ford et al v. Givens Brothers, a Corporation, Texas Civ. App., 318 S.W. 2d 123 (1958), wr. ref. n.r.e.; and Marshall v. San Jacinto Building, Inc., Texas Civ. App. (1938), 67 S.W. 2d 372, wr. ref.

Assuming, without deciding, that Genell, Inc. knew or should have known of the condition of the adjustment on the door closer and that Genell, Inc. was under a duty to change such condition, a recovery of damages is not sustainable where there is no evidence that the failure to inspect and change the condition of the door closer was the active cause which produced the injury and that Genell, Inc. could have reasonably anticipated that Rory Flynn was likely to utilize the door, either deliberately or accidentally, by stopping on the second step from the bottom stair and intentionally thrusting her arms and hands forward for the purpose of opening the door by pushing on the wooden surface of the door, and that she would accidentally strike the glass with her hands.

Although injury may result from a person's act or omission, yet, if the actor could not have reasonably foreseen the resultant injury, or injuries, similar in character, he is not to be held responsible therefor. Liability is grounded in the public policy behind the law of negligence which dictates that every person is responsible for injuries which are the reasonably foreseeable consequence of his acts or omissions. A person is not legally responsible for consequences which cannot be foreseen. Liability for negligence rests primarily on reason to anticipate injury and failure to perform the duty arising on account of such anticipation. See Texas & Pacific Railway Co. v. Bigham, 90 Texas 223, 38 S.W. 162, 163 (1896); Uvalde Construction Co. v. Hill, 142 Texas 19, 175 S.W. 2d 247 (1943). It is recognized in this state that anticipation of consequences is a necessary element in determining whether the injury complained of is proximately caused by such act or omission. Actual anticipation, of course, is not in any sense the test, but what one should under the circumstances reasonably anticipate as consequences of his conduct. See City of Dallas v. Maxwell, Texas Com. App., 248 S.W. 667, 670 (1923), opinion approved by the Supreme Court, 27 A.L.R. 927; East Texas Motor Freight Lines v. Loftis, 148 Texas 242, 223 S.W. 2d 613 (1949); Dallas Ry. & Terminal Co. v. Black, 152 Texas 343, 257 S.W. 2d 416 (1953); Houston Lighting & Power Company v. Brooks, 161 Texas 32, 336 S.W. 2d 603 (1960).

With the above rules of law in mind, and when the record

in the case is considered most favorably to the Flynns, as we must consider it, we are of the opinion and so hold that there is no evidence to support the judgment of the trial court. There is no evidence that Genell, Inc. could have anticipated the admitted and undisputed activity of Rory Flynn in opening the door. Foresight should not be arbitrarily imputed. Genell, Inc., in the light of all the attending circumstances, could not have reasonably foreseen that because it maintained any particular adjustment on the door in question that a person, including a child of the age of Rory Flynn, would have attempted to utilize the door in the manner described by her testimony. In making this holding, we have due regard for the rule that it is not required that this particular act should have been foreseen. All that is required is that the injury be of such general character as might reasonably have been anticipated. Genell, Inc. has properly raised the question that there is no evidence that any act of omission on its part (even assuming negligence) proximately caused the accident and resulting injuries sustained by Rory Flynn. Keeping in mind that the test as to whether a given act may be deemed the proximate cause of an injury, is simply whether in the light of all the attending circumstances the injury was such as ought reasonably to have been anticipated as a consequence of the act, we must sustain Genell's contention.

The judgments of the District Court and the Court of Civil Appeals are reversed and judgment is rendered for Genell, Inc.

Opinion delivered June 20, 1962.