UNITED STATES of America,
Appellee,

v.

MORAN TOWING & TRANSPORTA-
TION COMPANY, Incorporated,
Appellant.

UNITED STATES of America,
Appellee,

v.

BETHLEHEM STEEL COMPANY,
Appellant.

Nos. 9867, 9868.

United States Court of Appeals
Fourth Circuit.

April 10, 1969.

William A. Grimes, Baltimore, Md. (Southgate L. Morison, and Ober, Williams & Grimes, Baltimore, Md., on brief), for Moran Towing & Transp. Co.

David R. Owen, Baltimore, Md. (William R. Dorsey, III, and Semmes, Bowen & Semmes, Baltimore, Md., on brief), for Bethlehem Steel Co.

Robert E. Kopp, Atty., Dept. of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., Alan S. Rosenthal, Atty., Dept. of Justice, and Stephen H. Sachs, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BOREMAN, Circuit Judges.

HAYNSWORTH, Chief Judge:

In United States v. Bethlehem Steel Co. et al., 389 U.S. 575, 88 S.Ct. 689, 19 L.Ed.2d 775, the Supreme Court vacated our decision[1] and remanded the case to us for further consideration in the light of Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407. After supplemental briefing and argument, we reach the conclusion that further proceedings in the District Court are necessary, and the case will be remanded for that purpose.

In calm seas and clear weather the lead section of a wooden dry dock under tow began to list. The leak could not be controlled and pontoons of the adjacent section began to take on water. An attempt to return the dry dock to Bethlehem's yard was unsuccessful. The dry dock foundered. Though outside the main channel, the wreck was an obstruction to navigation in the approaches to Baltimore harbor. Additional facts appear in some detail in the earlier opinions of the District Court[2] and of this court.[3]

Initially, the District Court was of the opinion that the dry dock was not a "vessel" or other "craft" within the meaning of 33 U.S.C.A. § 409 and that its owner was responsible for its removal, as an unauthorized obstruction of navigable waters, under the provisions of 33 U.S.C.A. §§ 403 and 406. It ex-pressed the view that the owner of a sunken vessel was under no obligation to remove it under § 409, unless the sinking was intentional, not just negligent, but as an alternative basis for its conclusion, it found the sinking to have been intentional. We reversed, for we were of the opinion that the dry dock was a "vessel" or other "craft" within the meaning of § 409 and that the sinking was not intentional. We agreed with the District Court's construction of § 409 as imposing no liability upon the owner for the removal of a vessel negligently, rather than intentionally, sunk in navigable waters.

In *Wyandotte*, the Supreme Court held that our construction of § 409 was too restrictive in ascribing exclusivity to the *in rem* rights that section confers upon the United States with respect to vessels negligently sunk in navigable waters. By reference to other sections, the Supreme Court held that the United States had, in addition to the *in rem* rights conferred upon it by § 409, a right of action *in personam* to recover from the owner the cost of removal of a vessel negligently sunk.

The Supreme Court's remand of this case poses the remaining question under § 409 with the *in personam* rights the Supreme Court has held to be available to the United States in proceedings under that section. Recovery under that section is dependent, however, upon a finding that the vessel's sinking was the result of the negligence of her owner or of her crew. Such findings are not contained in the present record.

The question of negligence was irrelevant if the case was controlled by §§ 403 and 406, as the District Court thought. It was similarly irrelevant under its view, which we shared, of § 409. Attention in the District Court, therefore, never focused on the question of negligence. Nevertheless, seemingly in passing, the District Court did find that Bethlehem was negligent in failing

1. 374 F.2d 656.

2. 235 F.Supp. 569.

3. 374 F.2d 656.

to send an inspector inside the pontoons and that Moran, the towing company, was negligent in undertaking the tow when it knew or should have known that the interior of the pontoons had not been subjected to a recent visual inspection.

That finding of negligence has been much mooted in this court in light of the results of earlier surveys, the steps that were taken to prepare the dock for the voyage and the fact that, until a few days before the tow commenced, the dock had been in regular, active service, efficiently lifting and supporting heavy ships. Unmentioned by the District Court, and little noticed here, is a contention that the connections between the sections would create unusual stresses in a towing situation and that it was imprudent to have commenced the voyage without having first separated the sections, making each a separate tow.

■■ Fatal to disposition of the case in this court on the present record, however, is the absence of any finding of the cause of flooding of pontoons on one side of the lead section and later of pontoons in the adjoining section. The fact of the flooding might warrant an inference of unseaworthiness as against a contention that the lead section might have been struck by a submerged log or other obstruction, but even if there had been a finding of unseaworthiness, there is no finding which would relate unseaworthiness to any negligence on the part of Bethlehem or of Moran. The question is not one of unseaworthiness but of negligence. Were we now prepared to accept the finding of negligence in failing to send an inspector into the pontoons, the finding is dangling, for it is unaccompanied by any finding that such an inspector, exercising due care, should, or even might, have found any deficiency which had any proximate re-

lation to the foundering. One is not accountable for negligence, of course, unless it is the proximate cause of the event which is the basis of the claim, and a negligent failure to inspect does not result in the imposition of liability unless it is established that a reasonable inspection would have disclosed the presence of the defect which caused the harm.[4]

■■ Since the District Court, under its view, and ours, of the issues, did not address itself to these matters, which under the Supreme Court's construction of § 409 have now become of controlling significance, it is necessary that the case be remanded to the District Court for further findings. In doing so, we intimate no opinion as to the adequacy of the present record to support the finding of negligence in failing to send an inspector into the pontoons or to support any finding as to the presence and discoverability of any defect which occasioned the flooding and ultimate sinking. Because the attention of everyone concerned was addressed to other matters, we do think the parties should be afforded an opportunity to present additional evidence relevant to the remaining issues after which the District Court may make new findings to resolve the remaining issues. To that end the earlier findings are vacated and the case remanded for further proceedings consistent with this opinion and the Supreme Court's remand.

Vacated and remanded.

SOBELOFF, Circuit Judge (concurring specially):

Without adopting all of the intimations in the discussion of proximate cause, I readily concur in the remand of the case to the District Court for further findings on the question of negligence.

4. *See* 2 Restatement of Torts (2d) § 300, Comment C.