**Paul Ray GUIDRY, Appellant,**

v.

**NECHES BUTANE PRODUCTS CO. et al., Appellees.**

**No. 7226.**

Court of Civil Appeals of Texas, Beaumont.

April 8, 1971.

William E. Townsley, Beaumont, for appellant.

Strong, Pipkin, Nelson, Parker & Powers, Weller, Wheelus, Green & Brocato, Beaumont, for appellees.

PARKER, Chief Justice.

Summary judgment was rendered against plaintiff, Guidry, in his third-party action brought against Neches Butane Products Company (hereinafter "Neches") to recover damages for personal injuries he sustained while in the course of his employment with Foster-Wheeler Corporation (hereinafter "Foster") while working within the plant of Neches. Foster was made a third-party defendant, and it impleaded as a third-party defendant Tri-Co, Inc. Liberty Mutual Insurance Company, the subrogated workmen's compensation insurance carrier intervened. The judgment denied Guidry a recovery on his action, denied Neches a recovery against Foster, and approved Foster's nonsuit against Tri-Co.

Plaintiff was a pipe foreman employed by Foster upon a building project pursuant to contract between Foster, Goodrich-Gulf Chemicals, Inc., and Texas-U.S. Chemical Company, the joint owners of Neches. At the time he received his injuries, Guidry was assisting in the movement of a large heat exchanger which was being lifted by a mobile crane rented by Foster from Tri-Co. The crane was equipped with four outriggers to provide stability during the lifting operation. Guidry had other workers place these four outriggers on firm-looking soil. Mats for use under the outriggers to prevent their sinking when the load was placed thereon were available but were not used. As the crane lifted the heat exchanger, it turned and stopped momentarily. Suddenly, the outrigger bearing the bulk of the weight sank into the surface of the ground some ten inches, causing the heat exchanger to strike Guidry, inflicting serious injuries, for which he sued.

■ The defendants, Neches Butane and Foster, state in their motion for summary judgment that they rely upon the pleadings, the depositions on file, and the contract between Goodrich-Gulf Chemicals, Inc., Texas-U.S. Chemical Company, Neches Butane Products Company and Foster. There are no sworn pleadings in this case. The pleadings serve only to allege matters which, if proved, would require a judgment for or against the movant for summary judgment and are not evidence in the case. Further, if the plaintiff Guidry expected to defeat the motion for summary judgment by showing an issue of a material fact, it was incumbent upon him to come forward with "evidence" sufficient to raise that question. Kuper v. Schmidt, 161 Tex. 189, 338 S.W.2d 948, 951 (1960). By such opinion, and that of Hidalgo v. Surety Savings and Loan Association, 462 S.W.2d 540, 545 (Tex.Sup., 1971), it is unquestionably settled that in summary judgment proceedings, pleadings, even if sworn to, do not constitute summary judgment evidence.

Foster was an independent contractor upon the job in question, and the supervision of Neches was limited to that of having an engineer upon the job to see that the work was done in accordance with the specifications contained in the contract. He had no

control over the employees of Foster who were engaged in the performance of the work.

In his pleadings, Guidry charged that Neches, as owner of the premises, was negligent in creating a dangerous condition in the sub-soil where the outrigger of the crane sank, the dangerous condition being an unstable condition which was created before Foster entered upon the job site. Plaintiff also had allegations that Neches failed to warn him of the dangerous conditions of the soil, failed to properly inspect the soil and the surface at the time its original condition was altered, failed to restore the soil to a stable condition, and failed to ascertain that the soil would not support the weight of the crane and heat exchanger at the time of the accident.

The crane with the outriggers weighed fifteen tons, while the heat exchanger weighed slightly in excess of twelve tons. Guidry was an experienced workman upon such projects and, before making the movement, he inspected the ground where he directed the placement of the outrigger and the soil in the area looked firm, and to him it looked as good as concrete. The movement of the crane to the place of use did not cause any ruts. On a prior occasion, shortly before the accident, concrete trucks weighing fifteen tons and carrying twelve tons of material had passed over the area without incident.

Gary Graham, a mechanical engineer of Neches, was familiar with the area and the contract with Foster. Before the contract was let, Neches made some soil studies in the general area for use in the preparation of the specifications for the foundations and these studies were turned over to Foster for its use. From the depositions, it clearly appears that extensive sub-surface work had been done in the area from about 1951 to 1953 by another contractor who installed buried pipelines, etc., and the original contract had called for the covering of the area with six inches of oyster shell. Foster was furnished with the plans of the original work done in connection with the buried lines. There is no evidence that anyone actually inspected this area after the completion of the sub-surface work, in about 1953 or during its construction. Guidry's accident occurred in October, 1964.

The crane operator, Foster's superintendent, as well as Guidry, were all experienced men in construction such as was involved here and there is evidence that on other occasions on other jobs similar movements had been made in safety.

For the purpose of our discussion of the case, Neches did not succeed in negativing, as a matter of law, the existence of a soft spot in the sub-surface area in the precise location where the outrigger of the crane penetrated the surface. None of the parties had any actual knowledge of the existence of this defect in the sub-surface area. When Neches Butane furnished Foster, Guidry's employer, and the independent contractor on the premises, with Plaintiff's Exhibit No. 2 (the paving plan of 1951–1953), each then knew the land was not in its original condition. Guidry, an experienced operator, inspected the surface before he placed the crane, considered it to be as good as concrete. With his experience, Guidry considered a visual inspection of the surface where the accident occurred was adequate to determine whether or not it was safe to use the crane on that surface. No one suggests that a visual inspection of the surface by an experienced operator was not such an adequate and reasonable inspection as a reasonably prudent person would make to determine whether or not a dangerous spot existed in that surface.

Further, the hidden and unknown condition, which proved to be dangerous considering plaintiff's use thereof, was neither open nor obvious, nor did plaintiff voluntarily assume the risk of injury from the use which he made of the premises upon the occasion of the accident. Nor do we reach the question of plaintiff's contributory negligence arising out of his

own actions in attempting to lift the heat exchanger.

Our question may now be stated: Under the factual hypothesis herein set out, did Neches establish, as a matter of law, that there was no genuine fact issue as to liability?

■ Our consideration of the appeal, as may be noted from our statement of the question, is under the rule of law set out in Gibbs v. General Motors Corporation, 450 S.W.2d 827, 828 (Tex.Sup., 1970):

"* * * the question on appeal, as well as in the trial court, is *not* whether the summary judgment proof *raises fact issues* with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof *establishes as a matter of law that there is no genuine issue of fact* as to one or more of the essential elements of the plaintiff's cause of action." (Emphasis by the Supreme Court.)

■ From a few of the leading cases upon the subject, we distill this résumé of the obligations of the landowner:

1. The landowner is not an insurer of the safety of his invitees. McElhenny v. Thielepape, 155 Tex. 319, 285 S.W.2d 940, 941 (1956).

2. He is required to keep his premises in a reasonably safe condition for his invitees. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 378 (Tex.Sup., 1963).

3. Employees of contractors performing construction work on the premises are invitees thereon. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 431 (1950).

4. The duty of the landowner is to protect his invitees from dangers of which he knows or of which he should know in the exercise of ordinary care, which includes a duty to inspect. Halepeska, supra.

5. If there are dangers which are not open and obvious, he is under a duty to take such precautions as a reasonably prudent person would take to protect the invitees therefrom *or* to warn them thereof. Delhi-Taylor Oil Corp. v. Henry, 416 S.W. 2d 390, 392 (Tex.Sup., 1967).

6. An adequate warning to or full knowledge by the independent contractor of the dangers will discharge the duty to warn the employees of the contractor. Delhi-Taylor, supra, at p. 394.

7. The landowner's liability is said to rest on the "owner's superior knowledge of the danger." Hall v. Medical Bldg. of Houston, 151 Tex. 425, 251 S.W.2d 497, 500 (1952), quoting from 65 C.J.S. Negligence § 50, p. 543 [now found in 65 C.J.S. Negligence § 63(53), at p. 764].

8. Some of these rules were restated in City of Beaumont v. Graham, 441 S.W.2d 829, 834 (Tex.Sup., 1969):

"Stated generally, these duties require elimination, or warning to the invitee, of hidden conditions which are unreasonably dangerous and which are known to the owner or occupier but are unknown to the invitee. They also require an owner or occupier to make such an inspection of the premises to discover hidden dangers as would be made by a reasonably prudent person in the exercise of ordinary care."

In a trial upon the merits, it would have been Guidry's burden to show by competent evidence of probative force that Neches would have known of the hidden defect had it made a reasonable inspection of its premises. Cf. City of Beaumont v. Graham, supra, 441 S.W.2d at p. 835, commenting upon the refusal of the jury to find that City knew or should have known of the defective condition in its water tank.

In coming to grasp with the controlling principles of law, we enter a procedural morass which makes the factual solution difficult. The plaintiff, Guidry, labored under an unusual burden: he "must negative 'no duty'" in order to prevail. Halepeska, supra (371 S.W.2d at p. 378). And,

Neches, in order to prevail upon the summary judgment proceedings, had the burden of establishing as a matter of law that there was no genuine issue of fact as to its liability. Thus, the "clumsy concept" of "no duty" cast upon Neches the obligation of proving as a matter of law that Guidry had failed, as a matter of law, to raise a fact issue.

We have a well-illuminated path to follow when we consider defects upon the premises which are: (a) open and obvious, and (b) not open and obvious, but are such that the landowner either knew, or in the exercise of reasonable care in inspection thereof, should have known, involved an unreasonable risk of danger. However, when we come to consider a case such as we have here, the area is murky and the answer is not so clearly indicated by the decided cases.

The court, in McCarthy v. Hiers, 81 Ga. App. 365, 59 S.E.2d 22, 24 (1950), set out the rule in this manner:

"Where the owner or occupier of premises is without actual knowledge of the existence of a defect, and there is nothing in the appearance or character of the premises or some instrumentality on the premises which would indicate the possible or probable existence of any defects, there is no reason to think an inspection necessary, and ordinary diligence would not require an inspection of the premises or an instrumentality upon the premises before permitting an invitee to make use of the same."

Accord: Daddetto v. Barbiera, 4 N.J.Super. 479, 67 A.2d 691 (1949); Brown v. United States, 122 F.Supp. 166, 168 (D.C.N.M., 1954); Wriglesworth v. Doyle, 244 Or. 468, 417 P.2d 999, 1001 (1966).

On the other hand, the rule which emerges from Justice Pope's consideration of the question in Camp v. J. H. Kirkpatrick Co., 250 S.W.2d 413 (Tex.Civ.App.—San Antonio, 1952, error ref. n. r. e.), is helpful,

persuasive, and peculiarly applicable to this unusual case. There, it was said:

"Assuming a condition of serious danger that is hidden from an invitee; he cannot recover if the owner neither knew nor ought to have known of it, for there is no breach of duty. [p. 417]

[Here follows a discussion of cases involving dangers which were either known or which should have been known, and the opinion continues:]

"Cases where danger either was known or should have been known are no authority where that element is not proved. [p. 419]"

This principle is amplified, to some extent, in England v. Salamon, 324 S.W.2d 765, 767 (Mo.App.—St. Louis, 1959, no writ), stating the rule in this manner:

"However, the landowner will not be held liable for hidden defects which would not have been discovered by a reasonably careful inspection. 65 C.J.S. Negligence § 51, p. 547 [now found in 65 C.J.S. Negligence § 63(54), at p. 774]. His duty is one of ordinary care. He is not an insurer of the safety of invitees who come upon the premises. *Nor should he be held liable for defects which an investigation might reveal unless the situation suggests an investigation.* The facts in evidence should indicate to a reasonably prudent man the likelihood of the existence of some hidden danger to persons lawfully upon the premises. One from whom ordinary care is demanded is bound to guard only against those occurrences which can reasonably be anticipated by an "ordinarily prudent man. 38 Am.Jur., Negligence, Sec. 24." (Emphasis supplied.)

As was said in United States v. Moran Towing & Transportation Company, 409 F.2d 961, 963 (4th Cir., 1969):

" * * * a negligent failure to inspect does not result in the imposition of liability unless it is established that a reason-

able inspection would have disclosed the presence of the defect which caused the harm."

Judge Haynesworth, in Moran, supra, called attention to Restatement of the Law of Torts, 2d, § 300, Comment C. See also, Kozloski v. Modern Litho, Inc., 182 Neb. 270, 154 N.W.2d 460, 463 (1967); 65 C.J.S. Negligence § 63(54), at p. 774.

Indeed, a similar rule was applied by our Supreme Court in Western Textile Products Co. of Texas v. Sidran, 153 Tex. 21, 262 S.W.2d 942, 943 (1953), although an appliance was involved rather than land. The court said:

"The rule is stated in 65 C.J.S. Negligence, § 87:

" ' * * * Failure to make certain tests is not negligence where it does not appear that such tests are common or prudent, and no liability may be imposed by reason of the failure to make an inspection where the inspection, if made, would not have disclosed the particular defect causing the injury, or where the owner has no reason to think an inspection is necessary. * * * '

"To the same effect is the holding in Trinity & B. V. Ry. Co. v. McDonald, Tex.Com.App., 208 S.W. 912, 914: * * "

Texas is firmly committed to the rule of law enunciated in Restatement of the Law of Torts, 2d, § 343 [see Western Auto Supply Co. v. Campbell, 373 S.W.2d 735, 736 (Tex.Sup., 1963)], but neither the text nor the comments offer a solution to our problem.

Unquestionably, Neches owed a duty to Guidry of furnishing a reasonably safe place to work and if there were hidden dangers, it owed to him the duty of making a reasonable inspection to determine the existence of such dangers. If such a reasonable inspection disclosed a dangerous condition, it then owed to him the duty of eliminating the dangerous condition or giving adequate warning of its existence. But, if the conditions upon its premises were not such as would cause a reasonable man in the exercise of ordinary care to make such an inspection, the duty to inspect did not arise.

One of the teachings of Delhi-Taylor, supra (416 S.W.2d at p. 392) is that "the owner or occupier owes no duty to his invitees either to eliminate or to warn of dangerous conditions on the premises which are as well known to them as they are to him." The converse of the rule so stated should have equal validity. If neither the invitee nor the owner, in the exercise of ordinary care, knew or should have known of the dangerous condition on the premises, the landowner has no duty to his invitee to either eliminate the danger or to warn him thereof. Neither party having any reason to make an inspection to discover the latently dangerous condition, the landowner can have no "superior knowledge of the danger." Hall v. Medical Bldg. of Houston, supra, 251 S.W.2d at p. 500.

█ We accept the proposition that, "The failure of one party in a hearing upon a motion for summary judgment to discharge the burden which would rest on him at a trial on the merits is no ground for a summary judgment in favor of the other party." Tigner v. First National Bank of Angleton, 153 Tex. 69, 264 S.W.2d 85, 87 (1954); Gibbs v. General Motors Corporation, supra, 450 S.W.2d at p. 828.

But, when we look at the other side of the coin, we find no evidence in our record which would support an inference that Neches, in the exercise of ordinary care in making a reasonable inspection of the premises, would have learned of the hidden defect. The unusual circumstances surrounding this accident furnishes no basis for a belief that *any* reasonable inspection of the premises would have disclosed the condition which caused Guidry's accident. Notice had been given to Guidry's employer, the independent contractor on the premises, that the land was not in its original condi-

tion—a warning of potential danger under Delhi-Taylor, supra.

In the celebrated case of Palsgraf v. Long Island Railroad Co., 248 N.Y. 339, 162 N.E. 99, 100, 59 A.L.R. 1253, 1256 (N.Y. Ct.App., 1928), Judge Cardozo used, although in a different context, these eloquent words to circumscribe the duty concept, saying:

> " * * * the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty."

The condition of the premises of Neches was static and we are not presented with a situation such as was considered by the court in Hernandez v. Heldenfels, 374 S.W. 2d 196, 201 (Tex.Sup., 1963), where plaintiff's injuries were caused by a moving truck.

■ The fact that Guidry sustained his injury while upon the premises of Neches is not dispositive for it has long been clearly established in our law that the mere happening of an accident is not of itself any evidence of negligence. Rankin v. Nash-Texas Company, 129 Tex. 396, 105 S.W.2d 195, 199 (1937). For, as was said in Thoreson v. Thompson, 431 S.W.2d 341, 344 (Tex.Sup., 1968):

> " * * * the fact an accident happens is no evidence that there was an unreasonable risk of such an occurrence; because almost any activity involves some risk of harm."

■ As a matter of law, Neches negatived Guidry's claim of a breach of duty. Cf. Texaco, Inc. v. Roscoe, 290 F.2d 389, 391 (5th Cir., 1961). To hold otherwise would be to make Neches an insurer of the safety of the employees of contractors upon its premises. This we decline to do.

We are of the opinion, therefore, that under the peculiar facts of this case, Neches has discharged the burden resting upon it in the summary judgment proceeding. In so holding, we have placed the decision upon the ground that Neches has shown, as a matter of law, that it breached no duty toward Guidry. It has, to state the point differently, succeeded in disproving Guidry's burden of negativing "no duty." An equally solid basis of the decision in this case is that Neches also negatived proximate cause as a matter of law, even if Guidry had shown an issuable fact on negligence, and to this facet of the case we now turn.

Justice Greenhill, in Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560, 564 (1961), said:

> "The definition [of proximate cause] embraces at least two distinct concepts, both of which must be present: (1) there must be cause in fact,—a cause which produces an event and without which the events would not have occurred; *and* (2) foreseeability." (Emphasis by the court.)

Accord: Texas & Pacific Railway Company v. McCleery, 418 S.W.2d 494, 498 (Tex.Sup., 1967); Enloe v. Barfield, 422 S.W.2d 905, 908 (Tex.Sup., 1967). Cf. Kaufman v. Miller, 414 S.W.2d 164, 167 (Tex.Sup., 1967).

■ As said in Genell, Inc. v. Flynn, 163 Tex. 632, 358 S.W.2d 543, 546 (1962):

> "Although injury may result from a person's act or omission, yet, if the actor could not have reasonably foreseen the resultant injury, or injuries, similar in character, he is not to be held responsible therefor. * * * A person is not legally responsible for consequences which cannot be foreseen. * * * Actual anticipation, of course, is not in any sense the test, but what one should under the circumstances reasonably anticipate as consequences of his conduct. [Citations omitted.]"

See also, Bell v. Campbell, 434 S.W.2d 117, 121 (Tex.Sup., 1968).

The Texas rule finds its antecedents, as shown by the quotation from Genell, supra,

in the eloquent language used by Chief Justice Gaines in the celebrated case of Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162 (1896), where he traced the origin of the rule back to the ancient writers. We believe that our case is subject to the same comment as that Judge Gaines made in Bigham, supra (38 S.W. at p. 164):

> "In our opinion, nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury of the person of the plaintiff."

The difficulty which we have encountered in the decision in this case stems from the natural reluctance of the court to deprive a litigant of his day in court. The function of this court is, as we are told in Houston Pipe Line Company v. Dwyer, 374 S.W.2d 662, 663 (Tex.Sup., 1964), that, "The duty of this court, where a motion for summary judgment has been granted, is to determine if there are any issues of fact to be tried." Or, as was said in Kaufman v. Blackman, 239 S.W.2d 422, 428 (Tex.Civ. App.—Dallas, 1951, error ref. n. r. e.) [quoted with approval in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931 (1952)]:

> "The underlying purpose of Rule 166–A was elimination of patently unmeritorious claims or untenable defenses; not being intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact."

In Kuper v. Schmidt, supra (338 S.W.2d at p. 951), litigants were warned that, "If the defendants expected to defeat the motion for summary judgment by showing an issue of fact * * * it was incumbent upon them to come forward with 'evidence' sufficient to raise that question."

The rule which we are required to follow in reviewing a summary judgment case also is stated with remarkable clarity in Broussard v. Moon, 431 S.W.2d 534, 536 (Tex. Sup., 1968), in this manner:

> "* * * the problem may be stated in terms of whether Respondent would have been entitled to an instructed verdict— to judgment as a matter of law—had there been a conventional trial with the proofs the same as shown by the summary judgment record; * * *"

After reviewing the record in such manner, and although Guidry's trial pleadings were sufficient to charge negligence on the part of Neches, he did not "come forward with 'evidence' sufficient to raise" the issue which he had pleaded. Kuper v. Schmidt, supra.

Consequently, and despite the fact that this is a summary judgment proceeding, we are convinced that there was no error in rendering judgment in favor of the landowner. Cf. Lowe Chemical Company v. Greenwood, 433 S.W.2d 695 (Tex.Sup., 1968), wherein a summary judgment in favor of the landowner was reinstated after it had been reversed by the Court of Civil Appeals.

The judgment of the trial court is affirmed.

STEPHENSON, Justice (dissenting).

I respectfully dissent.

The majority opinion will, I am afraid, create much more confusion as to the status of summary judgment law in this state. The correct rule placing the burden of proof upon the movant is stated in several places throughout the opinion. However, interspersed among correct statements of the law, are, what I consider to be, misstatements which will do the harm I have just mentioned.

In the third paragraph of the majority opinion, a correct statement of the law is made that pleadings are not evidence, and citing the two Supreme Court decisions, Kuper v. Schmidt, supra, and Hidalgo v. Surety Savings & Loan Association, supra. But between that correct statement of the

law, and the citations, the majority opinion contains this misstatement of the law:

"Further, if the plaintiff Guidry expected to defeat the motion for summary judgment by showing an issue of a material fact, it was incumbent upon him to come forward with 'evidence' sufficient to raise that question."

It is noted that in both of these Supreme Court cases, the movant for summary judgment was plaintiff. In Hidalgo v. Surety Savings & Loan Association, supra, the court merely held the plaintiff must do more than merely allege a cause of action, he also had to prove a cause of action, and allegations in a sworn petition were not proof. Kuper v. Schmidt, supra, is a suit on a note, in which defendant had alleged conditional delivery. Plaintiff (movant) in his motion for summary judgment, had made the proper proof as to his cause of action and would have been entitled to judgment. The Supreme Court held under these circumstances the defendant must do more than allege conditional delivery of the note, that it was necessary to raise a fact issue as to that matter. The quotation of law from this case is as follows:

"When facts entitling the moving party to prevail have been established by affidavits, deposition testimony or admissions, the motion for summary judgment will not be denied merely because the opposite party has alleged matters which, if proved, would require that a different judgment be rendered."

Such holding is in accord with the Supreme Court's most recent expression in Gibbs v. General Motors Corporation, supra. The distinct impression is left by the majority opinion that Guidry in our case had to come forward and prove an issue of fact existed in order to defeat defendant's motion for summary judgment. Such a misconception as to the burden of proof is a dangerous statement of law to appear at this late date. The quotation in the majority opinion from Gibbs v. General Motors Corporation, supra, should lay this matter to rest, once and for all.

In the case before us, the plaintiff did not have to prove that Neches would have discovered the dangerous condition through an inspection made by it in the exercise of ordinary care. On the contrary, the burden was upon Neches to prove, as a matter of law, that it would not have discovered the dangerous condition if it had made the inspection required of a person exercising ordinary care.

The statement is made in the majority opinion that "Guidry, labored under an unusual burden: he 'must negative "no-duty"' in order to prevail," citing Halepeska v. Callihan Interests, Inc., supra. This statement, as written, leaves the impression that it describes plaintiff's present burden. I hesitate to make this elementary statement, but the burden plaintiff had on this motion for summary judgment is not the same as the one he will have on a trial upon the merits, if he is given his "day in court." In the case before us Guidry had no burden to negative "no-duty" in order to prevail.

The defendant Neches offered no evidence to show it made an inspection of these premises in order to determine whether or not it could be used safely for the purpose which Neches knew it would be used. Neches also offered no evidence to show what the usual and customary type of inspection would consist of in order to determine whether or not the soil would bear the weight of the equipment which Neches knew would be used. Further, Neches offered no evidence to prove that the deficiency of the soil as being capable of bearing the weight of the equipment, would not have been revealed by an inspection made in the exercise of ordinary care. It is reiterated for emphasis, defendant Neches had the burden on this motion for summary judgment, to prove these issues as a matter of law. Neches, not only did not establish these issues as a matter of law, it failed to offer any proof at all.

The majority opinion, by in effect shifting the burden of proof upon these issues to plaintiff, permits defendant to win its case without making the proof required of it by law.

I would reverse the judgment of the trial court, and remand this case for a trial on the merits.