Paul Ray GUIDRY, Petitioner,

v.

NECHES BUTANE PRODUCTS COM-
PANY et al., Respondents.

No. B–2770.

Supreme Court of Texas.

Jan. 5, 1972.

Rehearing Denied March 8, 1972.

William E. Townsley, Beaumont, for petitioner.

Strong, Pipkin, Nelson, Parker & Powers, Weller, Wheelus, Green & Brocato, George A. Weller, Beaumont, for respondents.

POPE, Justice.

Plaintiff Paul Ray Guidry instituted suit against Neches Butane Products Company for the recovery of damages for injuries he sustained in 1964 while in the course of his employment with Foster-Wheeler Corporation. He alleged that Neches' premises had a hidden, dangerous ground condition which caused his injury. Neches answered and also filed a third-party action against Foster-Wheeler on its indemnity agreement. The trial court sustained the motions for summary judgment urged by Neches and Foster-Wheeler to plaintiff's suit, and the court of civil appeals, with a divided court, affirmed that judgment. 466 S.W.2d 389. We reverse the judgments of the courts below and remand the cause for trial.

Neches and Foster-Wheeler's summary judgment proof consists of several depositions, including Guidry's, some drawings and pictures, and the contract between Neches and Foster-Wheeler. This proof shows that Foster-Wheeler contracted to erect a butadiene unit as an addition to Neches' Jefferson County industrial plant. Guidry was Foster-Wheeler's pipe foreman for the job and on the occasion of his injury was assisting in the placement of a twelve-ton heat exchanger on its foundation. Foster-Wheeler hauled the heat exchanger to the job site by trailer-truck and also brought in a mobile crane weighing thirty-five tons. The crane was to lift the heat exchanger from the truck and then swing it into position over the foundation. Neches had assigned a work area to Foster-Wheeler and, on the day of the accident, had told Guidry in what area he could use the crane. Guidry followed the instructions.

Guidry and other workers spotted the crane in an area that was surfaced with shell and then extended the crane's four outriggers as a means to steady the crane and relieve the weight from the rubber tires. Each outrigger sat on a base plate that was thirty-six inches square. Guidry's job was to signal the crane operator so the heat exchanger could be positioned on its foundation. The crane began its lift and moved the heat exchanger almost into position when suddenly the weight-bearing outrigger broke through a shell crust at the surface of the road and sank into the soil to a depth variously estimated as six to eighteen inches. To keep the crane from turning over, the crane operator quickly lowered the exchanger to the ground. In doing so, however, the heat exchanger swung out of position and fell on Guidry, causing severe injuries to his chest, face and feet.

Guidry alleged in his petition that Neches provided a work area in which there was a hidden weight-bearing weakness of

the soil surface, that Neches created the dangerous condition before it made its contract with Foster-Wheeler and that Neches knew about it but neither made the premises safe nor warned Guidry or his employer of the danger. He also alleged that Neches failed to inspect the condition of the soil following a 1952 construction program, at which time Neches had installed two thirty-six inch water lines, and that Neches failed to restore the soil to a safe condition.

We granted the writ in this case because of several holdings in the majority opinion which violated Rule 166–A and misplaced the burden upon Guidry, the non-movant, to make proof of his cause of action. See, Torres v. Western Casualty and Surety Company, 457 S.W.2d 50 (Tex.1970); Glenn v. Prestegord, 456 S.W.2d 901 (Tex.1970); Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.1970). We agree with the views expressed by Justice Stephenson in his dissenting opinion. 466 S.W.2d at 397.

Our problem is whether the trial court, upon the basis of the proof before it, correctly sustained Neches' and Foster-Wheeler's motions for summary judgment. In City of Beaumont v. Graham, 441 S.W.2d 829, 834 (Tex.1969), we restated the facts which Guidry must prove upon the trial of his action. We there stated the duties of an occupier in these words:

> * * * Stated generally, these duties require elimination, or warning to the invitee, of hidden conditions which are unreasonably dangerous and which are known to the owner or occupier but are unknown to the invitee. They also require an owner or occupier to make such an inspection of the premises to discover hidden dangers as would be made by a reasonably prudent person in the exercise of ordinary care.

■ For summary judgment purposes, the burden was on Neches and Foster-Wheeler to prove facts which would show as a matter of law that Neches either owed no duty or discharged its duty to Guidry. The difficulty in this case is that their own deposition proof includes facts and statements which defeat their right to a summary judgment. Movants' proof shows that there was in fact a soft spot in the work area and that it was hidden. Guidry said in his deposition that the surface was covered with shell, was firm, looked as good as concrete, and that he was told it was "finished soil." His superintendent said that the crane was spotted in an area of the road where the soil had been undisturbed. The proof shows that heavily loaded equipment trucks and concrete trucks as well as the mobile crane had moved on the other parts of the shelled area without leaving tracks. Guidry said that he often worked with similar lifting operations and that the load upon the surface was not considered a heavy load. He said that such a lift should not have required even the precaution of extending the outriggers on soil that is as firm as the shelled area appeared to be.

■ Neches failed to prove as a matter of law that it had no knowledge of the dangerous condition. It did not prove who caused the soft spot or how it was caused. Moreover, the proof was that Neches itself had caused a general disturbance of the subsoil during some extensive excavations about 1952 when it installed two thirty-six inch water lines and other structures beneath the shell work area. Neches had the burden to prove not only that it possessed no actual knowledge, but also that it discharged its duty as an occupier to inspect and to discover hidden dangers. This is so because Neches' duty was to protect its invitees from dangers about which it knew as well as those it should have known in the exercise of ordinary care. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 378 (Tex.1963); Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 431, 20 A.L.R.2d 853, 863 (1950). As stated by the dissent-

ing opinion in the court of civil appeals, Neches failed to prove what a reasonable inspection would consist of, what inspection it made if it did make one, or what results an inspection revealed or would have revealed. 466 S.W.2d at 398. The record does not show whether Neches made an inspection of the restored surface following the earlier excavation and underground construction or that it made any inspection prior to the time Foster-Wheeler commenced its later work in 1964.

Neches' real contention and the basis for the judgment of the courts below appears to be that Foster-Wheeler, as a matter of law, possessed full knowledge of the facts concerning the soil condition. It relies upon the rule announced in Delhi-Taylor Oil Corporation v. Henry, 416 S.W.2d 390, 394 (Tex.1967), that an adequate warning to or full knowledge by an independent contractor of dangers will discharge the landowner's duty to warn an employee. Neches did not warn Foster-Wheeler; it relies, instead, upon three facts as conclusive proof that Foster-Wheeler had knowledge of the hidden danger Neches furnished Foster-Whee drawings which showed the plans for the earlier 1952 ruction; (2) Foster-Wheeler actually did some exploratory excavation in the soil one month before Guidry's accident occurred; and (3) Neches furnished some soil samples to Foster-Wheeler. We shall discuss these contentions separately.

A part of Neches' proof was an engineer's drawing of the earlier 1952 construction. The drawing shows the location of the underground structures, the yard plan, and the fact that the plans called for a six-inch topping of shell on the land surface. Nothing on the drawing discloses any danger or defect of any kind; it shows instead that the surface was in fact planned as a safe finished surface.

Foster-Wheeler made an excavation in the work area about one month before Guidry was hurt. It knew from the 1952 drawing that some large water lines were located beneath the surface of the work area. It knew also that there was a large concrete anchor block which had been poured at the end of a water line where it dead ended. The large block was used to give support to the line and protect it from bursting by reason of the water pressure. Foster-Wheeler with the use of a backloader dug down four feet to the top of the concrete block and then dug two more feet. Neches argues that this exploratory operation revealed to Foster-Wheeler and hence to Guidry all knowledge about the soil, including its moisture content, that any inspection by Neches would have revealed. We do not agree with Neches' contention. The contention is not that the outrigger of the crane sank at the place of the Foster-Wheeler excavation. The proofs do not place the soft spot in the surface closer than four to six feet from edge of the Foster-Wheeler excavation. nnot be held, as a matter of law, that xcavation at one place revealed to ter-Wheeler the fact that there was a weak place in the roadway at another place.

Neches also says that it supplied certain soil samples to Foster-Wheeler which were taken in connection with some foundation studies. We know nothing more about the samples, where they were obtained, what they revealed, whether a study for foundation information revealed any safety or danger factors, or any other fact. We conclude that Neches did not prove as a matter of law that either Foster-Wheeler or Guidry knew of the presence of a defective soft spot in the work area.

The judgments of the courts below are reversed and the cause is remanded to the trial court.