**Earl HALL, Plaintiff-Appellant,**

**v.**

**MOVEABLE OFFSHORE, INC.,
Defendant-Appellee.**

**No. 71–2914**

**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Feb. 22, 1972.

Rehearing Denied June 13, 1972.

---

* Rule 18, 5 Cir., See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

**634**

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The central question in this appeal sounds more like a riddle—Who was in control of a scaffold without feet? The jury had the answer, but the Trial Court thought otherwise. The jury was right—or more accurately, theirs was the exclusive province to determine the issue after sifting through contested facts—and accordingly we reverse the Trial Court's judgment n. o. v. which dismissed Plaintiff's case.

The scenario in what would normally have been another multi-party donnybrook in which all lash out against each other, involves the following cast of characters in the order of their appearance, but headed by Hall, the injured Plaintiff, and Moveable Offshore, Inc., the sole Defendant. Dresser-Ideco sold an offshore drilling rig to High Seas, Inc. During construction of the rig at the Dresser Beaumont facility, scaffoldings leased from Safway Scaffold Company (whose name turned out to be somewhat less than prophetic) were erected about the rig, and particularly between the rig and the waterway through which it would eventually be carried to the drilling site. Forest Oil Company, drilling contractor for High Seas, hired Moveable Offshore, Inc. (Defendant) to transport the finished rig from the Beaumont facility down the Neches River to a drilling platform in the Gulf of Mexico. Moveable did not have available[1] a derrick barge required to load the rig, and accordingly contracted with Brown & Root, Inc. to furnish its derrick barge, the "Big John," and a crew to load the rig onto Moveable's transport vessel. Earl Hall (Plaintiff) was an employee of Brown & Root, who was injured while involved in this operation.

Harry F. Maddin, Corpus Christi, Tex., for plaintiff-appellant.

John H. Benckenstein, Beaumont, Tex., for defendant-appellee.

---

1. The original agreement between Forest Oil Company and Moveable Offshore called for the use of a derrick barge from Livingston Shipyards at Orange, Texas, but when the rig was ready to be moved, Livingston Shipyards was on strike.

The injury occurred while Hall was assisting in attaching a tagline from the derrick barge to the drilling rig. In this readily foreseeable pursuit, he had climbed the scaffolding adjacent to the rig to throw one end of the tagline to a fellow employee, the other end being fastened to the barge. At this time one of the legs of the scaffold began to sink into the ground and the scaffold began to tilt dangerously. Fearing that he would be trapped beneath the scaffold or thrown therefrom, Hall jumped to the ground as the scaffold was tilting over. As a result of this fall, he sustained permanently disabling injuries.

Had the scaffolding been equipped with "feet" or some other suitable support beneath its tubular legs, the accident would never have occurred. Hall sued Moveable for its failure to provide him with a safe working place and for its negligent failure to inspect and discover dangerous conditions at the working site and to protect him against or warn him of these obstacles to safe performance of his duties. On a general

verdict, the jury awarded him $51,000, but the Trial Court entered judgment n. o. v. for Moveable.[2] Hall appeals.

 The question in this case is nominally one of duty.[3] The rule in this Texas diversity action is that, "A general contractor *in control* of premises owes a duty to the employees of subcontractors similar to that owed by an owner or occupier of land to his invitees." McKee v. Patterson, 1954, 153 Tex. 517, 271 S. W.2d 391, 393 (emphasis added); Smith v. Henger, 1950, 148 Tex. 456, 226 S.W. 2d 425. Therefore, the real crucial question becomes—Was Moveable "in control" of the facility then being used which was located on the Dresser premises? This was a question of fact, submitted to the jury for a general verdict on proper instructions. Implicitly—by virtue of the general verdict for Plaintiff—the jury found that Moveable was in control of the "premises."

The issue was contested, but there is sufficient evidence in the record to support the jury finding on this issue.[4]

---

2. The order granting Defendant's motion for judgment notwithstanding the verdict does not set forth the particular reasons why the Trial Court deemed this action appropriate. It merely says that the Court has considered the motions and briefs of the parties and is of the opinion that Defendant's motion for judgment notwithstanding the verdict should be granted. Against the background of the requisite motion for directed verdict, his reasons could have included any one or more or all of the seven specifications, some five of which inferentially cover the issue of "control."

3. Proximate cause and damages are not contested—it is admitted that failure to inspect the scaffold and warn the Plaintiff proximately caused the injury.

4. The facts upon which the jury could have found Moveable to be in control of the scaffolding are well summarized in Hall's brief and we find the following excerpt an accurate and apposite abstract of the relevant evidence.
"Although [Moveable has] consistently denied that they had any right to control any portion of the Dresser-Ideco premises during these operations, it would seem implicit in the agreement which they entered

into to move the drilling rigs that it was necessary for them to take temporary control of so much of Dresser-Ideco's premises as was necessary to effectuate the movement of the rig. This involved the bringing in of sufficient crew members to do the preliminary work which necessitated the use of the ground around the drilling rig and including the area in which the scaffold was located. As a matter of fact, the record indicates that the scaffolding was directly between the rig and the water. The Texas Supreme Court has held that in any event actual physical possession of the premises is not a necessary element of control as long as there is a right to manage whether it is exercised or not. See American Fidelity & Casualty Co. v. Traders and General Insurance Co., 160 Tex. 554, 334 S.W.2d 772 (Tex.Sup. 1959). A witness for [Moveable], Mr. Clarence Thibodeau, who was the safety engineer for Moveable Offshore at the time of this accident, testified that he was on the Dresser-Ideco premises prior to the move in question, that he made an inspection "concerning Moveable Offshore's part, yes sir" (Tr. 235) and in response to a particular question asking if he had made an examination of the premises to see if there was anything there that might

After all, Moveable was the party who engaged Brown & Root to discharge functions which were essential to performance of Moveable's obligations. Moveable could anticipate that in rigging the rig for hoisting by the derrick barge, it might be necessary for workers to use some parts of the scaffolding which was so closely adjacent to the rig and had in fact been directly used in its construction. At least, it was not an unlikely or unnatural thing for workers to use this available and apparently adequate facility. Its location between the drilling rig and the water made it either essential or appropriate that it be used in executing the lift and transfer of the rig from the land onto a vessel. The practical necessities to carry out Moveable's engagement and the willingness of Dresser (the temporary "possessor" of the scaffolding before Moveable) that the scaffold be used if needed by Moveable or its subcontractors is quite enough to sustain the jury finding of control.

■ Since Moveable was in control of the premises, the only question remaining is the scope of the duty owed to Hall. The jury instructions correctly defined the duty as being "to inspect and discover dangerous conditions, and to protect his invitee from dangers of which the occupier knows, or of which he should have known in the exercise of ordinary care." The instructions also defined the duty to include the responsibility "to warn invitee" of dangerous conditions on the premises.[5] It is undisputed that Moveable failed to fulfill this

be hazardous to workingmen which they might not discover, Mr. Thibodeau testified, "I would imagine every site I do go on, sir, I do give it a complete examination and if I would have found something danger (sic), I would have notified anybody on the site". He further testified during this same line of questioning that he had seen the scaffolds, but that he couldn't say that he specifically looked at them in a sense like he would have done if his own company had been going to do the work that the Brown & Root employees were doing.

\* \* \* \* \*

Another of [Moveable's] witnesses, Mr. Leroy Spell, who is a foreman with Dresser-Ideco and was foreman over the waterfront facility involved in this accident at the time of the accident (Tr. 319), testified that Moveable Offshore and anybody else who came in under them came in with the permission and authority of Dresser-Ideco. He further testified that Dresser-Ideco made no attempt to exercise any control either over the manner by which the rig was removed or who performed such work. He testified that such control was left up to the contractor (in this case, Moveable Offshore). He further testified that Dresser-Ideco had disclaimed any right to control the area where they were working while removing the drilling rig, that this control had been relinquished to the general contractor, that he understood that Mr. Thibodeau with Moveable Offshore was the man who was in charge of the operation and Brown & Root was

working for him. He further testified that he knew that they were all there with his permission and consent under that arrangement. (Tr. 336, 337, 338, 339, 340). Previously, Mr. Spell had agreed that anything that had been left there by Dresser-Ideco that was in the way of the contractor or the subcontractor would have to be moved out of the way and he agreed that the contractor or subcontractor had the right to do that and have control over that. (Tr. 336)."

5. Once it was established that Moveable was "in control" of the area about the scaffolding, its duty must be measured by the standard of care applying to owners or occupiers of land, in this Texas diversity suit. That duty was defined in a very similar case decided recently by the Texas Supreme Court. See, Guidry v. Neches Butane Products Co., 1972, Tex. S.Ct., 476 S.W.2d 666. In *Guidry*, the injury was caused by a hidden weight bearing weakness in the soil surface and occurred when an outrigger on a crane sank into the ground causing the heat exchanger being lifted by the crane to be suddenly and unexpectedly lowered, injuring Plaintiff. In reversing the Court of Civil Appeals affirmance of summary judgment granted for landowner, the Texas Supreme Court held that the landowner owed a duty to contractor's employees to inspect and discover hidden dangerous conditions and to warn contractor or his employees. That is the same duty being asserted in this case, and which it is undisputed Moveable failed to fulfill.

duty, and that such failure proximately caused Hall's injuries.

Thus, accepting Moveable's construction of Texas law, and the jury verdict which rested on unassailable instructions and which is amply supported by sufficient evidence, judgment n. o. v.[6] was improper and must be reversed and remanded for entry of judgment on the jury verdict for the Plaintiff.

Reversed and remanded.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

---

6. The crucial questions of whether or not Moveable controlled the premises and, if so, whether its then-admitted duty was breached were questions of fact on which the evidence was not "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might [not] reach different conclusions." Boeing Company v. Shipman, 5

Cir. (en banc), 1969, 411 F.2d 365, 374. There was enough "conflict in substantial evidence to create a jury question." Id. at 375.