CHANNEL 20, INC.; et al.

v.

WORLD WIDE TOWERS
SERVICES, INC.; et al.

Civ. A. Nos. H–83–5023, H–83–5098, H–84–613, H–84–919, H–84–965, H–84–966, H–84–993, H–84–1120, H–84–1715 and H–84–2225.

United States District Court,
S.D. Texas,
Houston Division.

April 22, 1985.

As Amended May 6, 1985.

Joseph F. Archer, Archer, Peterson & Waldner, Houston, Tex., for plaintiffs.

Russell McMains, Edwards, McMains & Constant, Corpus Christi, Tex., Guardian Ad Litem.

Robert G. Taylor, II, Taylor, Hays, Price, McConn & Pickering, Houston, Tex., for World Wide Towers.

Patricia Hair, Crain, Caton, James & Womble, Houston, Tex., for Stainless, Inc.

Diana E. Marshall, Baker & Botts, Houston, Tex., for Harris Corp.

## MEMORANDUM AND ORDER

DeANDA, District Judge.

These consolidated diversity actions, which are governed by Texas law, were tried to a jury in February of 1985 for damages arising from the collapse of a 1,900-foot broadcast tower on December 7, 1982. All claims for personal injury arising out of this disaster were settled prior to trial, as were the claims filed by Channel 20, a Houston television station which lost substantial air-time due to the collapse, leaving outstanding the claims resulting from the deaths of the five workers, World Wide Towers' claim for property damage, and related cross-actions among the Defendants. The jury returned a verdict on

February 23, 1985, which imposed 100% liability on Defendant Stainless, Inc. for the deaths of five workers. (Stainless was the fabricator of the tower.) Pending before the Court are a number of post-verdict motions, to wit: Defendant Stainless's motions for new trial, for judgment n.o.v., for remittitur, for trial on indemnity issues, and for stay of execution of the judgment; the Plaintiffs' motions for partial new trial and severance, for certification and entry of judgment pursuant to Rule 54(b), F.R. Civ.P., and for judgment on the severed claims; and the motion for judgment n.o.v. of Defendant/cross-Plaintiff World Wide Towers.

■ We turn first to the motions of Stainless for new trial and for entry of judgment non obstante veredicto. One of the primary thrusts of these motions is that the Court incorrectly charged and instructed the jury on a number of points concerning Stainless's legal status as a general contractor and the concomitant duties thereto. The Court concludes that it correctly instructed and charged the jury because a general contractor who is in control of the premises owes a duty to the employees of subcontractors similar to that owed by an owner or occupier of land to his invitees. *Smith v. Henger* [148 Tex. 456] 226 S.W.2d 425 (1950); *also, Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex. 1978), overruling in part *McKee v. Patterson,* [153 Tex. 517] 271 S.W.2d 391 (1954). This duty attaches regardless of whether the contractor is in actual physical possession of the premises; actual possession is not a necessary element of "control" so long as there is a right to manage, whether or not it is ever actually exercised. *See, American Fidelity & Casualty Co. v. Traders and General Ins. Co.,* 160 Tex. 554, 334 S.W.2d 772 (1959). Based on the unambiguous provisions of the contract at issue and upon the evidence presented at trial, Stainless was "in control" of the premises based on the "right to manage" test. Since Stainless was in control of the

job site within the meaning of the foregoing test, the Court properly instructed the jury that Stainless had a duty (*inter alia*) to provide a safe work place and safe equipment, including proper inspection of the premises and equipment so as to discover hidden dangerous conditions and to warn the subcontractor or his employees of such conditions. *Guidry v. Neches Butane Products Co.,* 476 S.W.2d 666 (Tex.1972); *see also, Hall v. Moveable Offshore, Inc.,* 455 F.2d 633 (5th Cir.1972). Stainless's argument that it was merely another subcontractor which fabricated the tower is without any substantial support in the record.

■ A second line of argument is that exemplary damages were improperly awarded for a breach of contract. This contention is ill-founded since the imposition of liability here was not predicated on a plain breach of contract action. Rather, Texas law states that duties which arise pursuant to a contract must be performed with ordinary care and the failure to do so gives rise to a cause of action sounding in negligence. *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947); *UMC, Inc. v. Coonrad Electric Co., Inc.,* 667 S.W.2d 549 (Tex.Civ.App.— Corpus Christi 1983, writ ref'd. n.r.e.). In accordance with this aspect of Texas jurisprudence, the jury was instructed as to the pertinent contractual duties, and the jury found that Stainless was negligent in the performance (or non-performance) of these duties which proximately caused the collapse of the tower. While the jury did not find that the negligence of Stainless flowed from any reckless disregard or conscious indifference, the jury did find that Stainless *intentionally or consciously* failed or refused to perform its general contractor obligations. Such a willful failure to perform the duties of a general contractor, as outlined above, is sufficient to uphold the award of punitive damages. Stainless's "breach of contract" argument simply misses this point.[1]

---

1. We note in passing that Stainless also argues that there are no pleadings to support submis-

sion of the jury question relating to the intentional or conscious failure or refusal to perform

Stainless argues that, in any event, the award of damages to the widows and children of the deceased workers for their mental anguish was legally improper, absent some physical injury to the widows and children. Stainless relies on a number of authorities concerning this point, all of which pre-date the Texas Supreme Court's decision in *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983); *see also, Stanford v. McLean Trucking Co.,* 506 F.Supp. 1252 (E.D.Tex.1981), which effectively presaged *Sanchez.* The *Sanchez* court held that persons may recover damages for loss of society and mental anguish which flow from a wrongful death, pursuant to the Texas Wrongful Death Statute, Art. 4671, Tex. Rev.Civ.Stat.Ann. In light of this holding, Stainless's argument to the contrary are to no avail.

Error is alleged by Stainless in the submission of exemplary damage issues on behalf of the estates and on behalf of the widows and children. The gist of the allegation is that the award of exemplary damages to the widows and children and to the estates constitutes a double recovery. A resolution of this question necessarily involves reference to Art. 5525, Tex.Rev.Civ. Stat., which provides in pertinent part that all causes of action arising out of injuries which result in a wrongful death shall survive to and in favor of the heirs and legal representatives *and* the estate of such injured party and against the person or persons liable for such injuries (emphasis added). It is now well-settled in Texas law that the death of the injured party does not bar a recovery of exemplary damages by the estate itself. *Hofer v. Lavender,* 679 S.W.2d 470, 472 (Tex.1984); *Castleberry v. Goolsby Building Corp.,* 617 S.W.2d 665 (Tex.1981). Furthermore, under the Texas Wrongful Death Act and the state's survival statute, two separate and distinct causes of action may arise in a wrongful death case. The former statute created a new cause of action in favor of certain named survivors (*see e.g.,* Art. 4675, Tex.Rev.Civ. Stat.Ann.), while the latter did not create a new cause but rather kept alive the cause of action which the deceased might have had (Art. 5525, *supra*). Hence it is clear that the estate of a deceased person is a legal entity which is separate and distinct from those of the widows and other survivors of the deceased. It necessarily follows that no double recovery is present here; the estate may recover both actual and exemplary damages on behalf of the deceased workers, and the survivors may also recover both, in their own right. These two classes of Plaintiffs are not only legally distinct and separable, but each is entitled to particular elements of damages.[2] *See Hofer, supra,* esp. at 476; *also, Stiles v. Union Carbide,* 520 F.Supp. 865 (S.D. Tex.1981).

Stainless urges a number of points concerning foreseeability, legal duty, causation and sufficiency of the evidence which are either disposed of by previous portions of this opinion or are so lacking in merit as to warrant no discussion other than a summary rejection. Stainless does, however, raise one point of substance. The jury awarded $5,000,000.00 to the estates in punitive damages but awarded no actual damages for the men's conscious pain and suffering. It is axiomatic that punitive

---

the obligations of a general contractor. A review of the Joint Amended Pretrial Order (filed Nov. 2, 1984) clearly shows that the Plaintiffs made the necessary factual contentions regarding this jury question, esp. at pages 3 through 6. Since all parties were on notice that it is the standard practice of this Court to use the Joint Pretrial Order as the parties' trial pleadings, Stainless cannot be allowed to complain that no pleadings support any of the various jury issues. Moreover, Stainless cannot claim surprise regarding this jury question since the Plaintiffs submitted a specific and separate brief in support of submitting this (and certain other) questions on Nov. 2, 1984.

2. For example, the estates may recover for the men's conscious pain and suffering incurred prior to death while the widows may not. The widows, on the other hand, may recover lost future earnings caused by the men's deaths together with damages for lost society and mental anguish (i.e. "grief"). Thus, the two classes of Plaintiffs not only find their respective causes of action in different statutes, but the types of damages recoverable by them are different.

damages must bear some reasonable relationship to, and be supported by, the imposition of actual damages. Therefore, the motion for new trial must be granted in part. This point will be discussed in greater detail *infra*.

■ Finally, Stainless contends in its motions for new trial and for judgment n.o.v. that it is entitled to full indemnification from Defendant World Wide (an erector company retained as a subcontractor by Stainless which employed the deceased men and which entered into an indemnity agreement with Stainless). This Court previously ruled herein, at 596 F.Supp. 928, that the indemnity provision at issue did not clearly and unequivocally express any obligation on the part of World Wide to protect Stainless from the consequences of its own negligence, nor does the provision indemnify Stainless from the consequences of any negligence or fault concurrently attributable to World Wide and Stainless. In light of the jury's findings, made pursuant to proper charges and instructions, it is inconceivable that 100% of the negligence or fault attributed to Stainless can somehow be transmogrified into the sole negligence or fault of World Wide. Despite the fact that the Texas Workers Compensation Act, Art. 8306, Sec. 3, allows such an action seeking contractual indemnification to be maintained (as a general proposition), the terms of the contract and the facts of this case as developed at trial foreclose any colorable claim of Stainless's alleged right to receive *full* indemnification from World Wide.[3] Stainless is not entitled to judgment or a new trial based on this point.

■ The next motion for our consideration is Stainless's motion for remittitur. A number of issues raised therein have already been addressed, leaving only the question of whether the damages were excessive. Aside from the damages awarded to the estate (see above), the jury's findings are quite reasonable and are amply supported by the evidence. The men were all in their twenties and thirties at the time of their deaths and were employed in relatively high-paying jobs (because of the ultra-hazardous nature of their work). As to the pecuniary losses suffered by the various survivors, the evidence actually could have supported a much higher award than was made by the jury. Similarly, a reasonable fact-finder could have awarded significantly higher amounts to the survivors based only upon the elements of mental anguish and loss of society.[4] An award of punitive damages is supported by evidence showing a deliberate, conscious and willful decision on the part of certain Stainless executives to disregard the legal obligations created by their contract with the owners of the tower project, and defined by operation of law based on Stainless's status as a general contractor with a right to manage the job site. The motion for remittitur should be denied.

■ World Wide, who was a Plaintiff against Defendant Harris for property damage, has moved for judgment n.o.v. Harris manufactured the antenna which was being hoisted to the top of the tower when the collapse occurred. Various strict liability theories were posited against Harris regarding the design and manufacture of the antenna vis-a-vis its safe installation atop the tower. The jury found in favor of Harris on all pertinent issues, and these findings are by no means against the great weight and preponderance of the evidence. Moreover, the jury affirmatively found that Stainless negligently failed to provide information pertaining to the lifting of the antenna and failed to properly coordinate and supervise the lifting project. Such

---

**3.** The previous ruling left open certain narrow contingencies on the indemnification issues. Stainless has accordingly moved for a trial setting on the indemnity issues, which will be addressed below.

**4.** The jury did not expressly find separate amounts for the pecuniary and non-pecuniary losses. A review of their findings in light of the evidence presented shows that the jury made rather modest overall awards for the Plaintiffs' actual damages. The bifurcated review of pecuniary and non-pecuniary losses above is made solely for analytical purposes.

findings bolster the conclusion that Harris's antenna was properly designed and manufactured under the relevant circumstances and was reasonably fit for its intended purposes. We will not set aside the jury's findings entered in favor of Harris.

■ Plaintiffs have filed motions for partial new trial, severance, and certification of judgment pursuant to Rule 54(b), F.R.Civ.P. A core issue of these motions pertains to the jury's failure to award any actual damages to the estates for the decedents' conscious pain and suffering while awarding $5,000,000.00 to the estates in punitive damages. Plaintiffs contend that a finding of no actual damages is contrary to the great weight and preponderance of the evidence, and that a partial new trial should be granted only as to the estates' damages. Stainless counters by arguing that the evidence does not demonstrate any conscious pain and suffering, and that if any new trial is granted, only a full retrial would be proper.

A thorough review of the record supports the Plaintiffs' view of the evidence. A hallmark of this trial was the presentation into evidence of a videotape made of the calamity as it actually occurred. This videotape, with the audio portions deleted, was seen several times in court, including a slow-motion viewing with a witness analyzing the details of the lifting failure as it occurred. Such a close monitoring of the disaster reveals that the men appeared to be fully conscious at the beginning of the fall. The sequence of events causing the collapse of the tower began when the second stage of the antenna was being lifted to the top of the tower for installation. The bolts used in the lift suddenly broke, causing the antenna to fall. The deceased workmen were "riding" the antenna and there was no impact of any sort for several seconds until the antenna struck a large guy wire. At that instant, the men were forcefully dislodged from their positions on the antenna. This impact in turn caused the guy wire to snap and the tower itself then collapsed. Prior to the impact of the antenna hitting the guy wire, the uncontroverted evidence demonstrates that the men were conscious. Further, Plaintiffs introduced a second copy of the videotape with amplified audio containing distinct screaming which was not viewed by the jury. (This audio included narration.) The screams certainly seem to be those of the hapless workers plunging to their deaths. Based only on the video actually seen by the jury, the Plaintiffs made a showing (by the great preponderance of the evidence) that the men were conscious for at least part of their fall, and no one can seriously question that such a fall would engender terror and mental suffering of the greatest magnitude known to the human experience. Stainless did not produce any evidence whatsoever to negative this evidence, which strongly indicates the men's conscious anguish. Rather, Stainless relies only on its arguments that the men were not conscious. Arguments are not evidence. The Court finds that the great weight and preponderance of the evidence establishes the decedents' conscious pain and suffering. A new trial, at least in part, must be granted. *Brown v. Wacholz, Inc.*, 467 F.2d 18 (10th Cir.1972).

■ Rule 59(a), F.R.Civ.P., authorizes a new trial on all or part of the issues and as to all or any of the parties for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. Under pre-Rules practice, courts would generally order a new trial only for those parties prejudiced by an improper verdict or judgment. This principle continues under Rule 59, limited only by the precepts that a complete new trial is necessary when the liability of one party is so interrelated with that of others that the grant of a new trial must include all parties, or where it would be manifestly prejudicial not to retry the entire case. 6A Moore, *Federal Practice*, § 59.06 (1984). Ample authority exists for exercising our discretion to grant a partial new trial as to some parties or claims and allowing a favorable verdict to stand as to others. *E.g., Juneau Square Corp. v. First Wisconsin National Bank of Mil-*

*waukee,* 624 F.2d 798 (7th Cir.1980); *Vidrine v. Kansas City Southern Railway Co.,* 466 F.2d 1217 (5th Cir.1972); *Compagnie Nationale Air France v. Port of New York Authority,* 427 F.2d 951 (2d Cir. 1970). This course is an appropriate one where some error requires a new trial on some distinct and separable issues but leaves the verdict on completely separate issues uninfected. *Gasoline Products v. Champlin Refining Co.,* 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931); *Camalier v. Buckley-Madison Hotel,* 513 F.2d 407 (D.C.Cir.1975). Stated another way, a partial new trial is proper where the issue to be retried is so distinct and separable from the other issues that a trial of it alone may be had without prejudice. *Eximco, Inc. v. Trane Co.,* 748 F.2d 287, 290 (5th Cir.1984); *Vidrine, supra,* at 1221.

Prior decisions provide guidance in fleshing out the general principles enunciated in cases such as *Gasoline Products, Vidrine* and *Camalier.* For example, where the evidence supports the jury's liability findings, and the issues of liability and damages (for which a new trial is mandated by improper cumulation of verdicts rendered on alternate theories of liability) are not necessarily interwoven, a new trial may be properly limited to damages only, with the jury's apportionment of liability left undisturbed. *Greenwood Ranches, Inc. v. Skie Construction Co.,* 629 F.2d 518 (8th Cir.1980). Where there is no substantial indication that liability and damage issues are somehow inextrically interwoven, nor is there an indication that the verdict was the result of the jury compromising the liability and damage question, a retrial limited to damages is entirely proper. *Great Coastal Exports, Inc. v. International Brotherhood of Teamsters,* 511 F.2d 839 (4th Cir.1975), *cert. denied,* 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 799 (1976). As a general rule, error with respect to damages should require a new trial on damages only. *Sylvania Elec. Products, Inc. v. Flanagan,* 352 F.2d 1005 (1st Cir.1965). Finally, where questions of willful and wanton misconduct are involved in a personal injury action, a new trial limited solely to damage issues should be granted where it is plain that the error which has crept into one element of the verdict did not affect the jury's determination of any other issues. *Johnson v. Bowers,* 151 F.Supp. 777 (E.D.Ill.1957).

Based on the instant record, the Court finds that a partial new trial should be granted as to the estates' damages. As discussed earlier, the claims of the estates and the survivors are legally distinct and separable under Texas law. The jury's determinations of liability are supported by the evidence and appear to be sufficiently discreet (both factually and legally) from the question of damages to allow a partial new trial. There is no indication of any jury compromise. We can discern no error in any of the jury's other determinations, and there is no manifest prejudice to Stainless in exposing it to a retrial of only one set of the many claims asserted against it. Finally, the Court perceives no basis for concluding that *all* the issues are so inextricably interwoven as to mandate a complete retrial. The Plaintiffs' motion should be granted.

Rule 54(b), F.R.Civ.P., expressly allows parties involved in multiple claims or multi-party litigation who have separable causes of action to obtain the entry of judgment as to fewer than all of the claims or parties. This type of entry of judgment is proper only where the court makes an express determination that there is no just reason for delay in entering such a judgment, and when the equities of the situation outweigh the interests of judicial economy against potential piecemeal appeals. *E.g., Sears Roebuck and Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956).

In *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), the Supreme Court extensively reviewed the proper factors to be considered in whether a Rule 54(b) certification should be entered. The factors which are to be balanced against the equities include these:

(1) is the judgment on which certification is sought an ultimate disposition of the individual claim(s) concerned in this multiple party/multiple claim litigation;

(2) are the claims to be certified as final separable from the other claim(s) to be adjudicated; and

(3) is the nature of the claims already determined such that no appellate court would have to decide the same issue more than once in the event of subsequent appeals.

*Id.*, at 8–9, 100 S.Ct. at 1465; *see also, Piney Woods Country Life School v. Shell Oil Co.*, 726 F.2d 225 (5th Cir.1984).

██ The equities presented here are (*inter alia*) that no bonding or surety requirements will protect the minor Plaintiffs (or the other Plaintiffs) absent certification of judgment; available insurance proceeds may be insufficient to satisfy the judgment; and delay in execution on the claims of the widows, minor children and parents of the decedents may seriously impair collection of the judgment. Furthermore, Stainless is not entitled to any credits or set-offs in the subsequent partial retrial. A complex case should not, in and of itself, operate to prevent entry of judgment where, as here, liability and damages have been fully determined as to a large number of Plaintiffs and Defendants. As discussed earlier, the claims of the estate are entirely separable from those of the other Plaintiffs. Further, an ultimate disposition has been made as to the claims for which certification is sought. While the impact of certification on any subsequent appeals is not entirely clear and an appellate could conceivably have to decide certain issues twice, this factor alone should not be dispositive of the question before us. *Curtiss-Wright, supra,* 446 U.S. at 8, n. 2, 100 S.Ct. at 1465, n. 2. On balance, both the *Curtiss-Wright* factors and a consideration of the equities weigh heavily in favor of certifying that no just reason for delay in the entry of judgment is present. *See International Controls Corp. v. Vesco*, 535 F.2d 742 (2d Cir.1976). The Court hereby expressly so finds, pursuant to Rule 54(b),

and directs the entry of judgment as to all claims except those of the estates against Stainless, which will be severed from the case.

Having determined that a partial new trial should be granted and that the remaining claims should be severed and certified for judgment under Rule 54(b), we next focus on Plaintiffs' motion for entry of judgment on the remaining claims. The substance of the proposed judgment accurately reflects the Court's various actions taken in the resolution of this litigation. Before entering this judgment, however, we must address two important points: (1) whether prejudgment interest should be awarded to the Plaintiffs; and (2) the proper amount of fees to be awarded to the attorney *ad litem*.

Traditionally, Texas courts have denied the recovery of prejudgment interest in wrongful death actions. Plaintiffs ask us to change this rule and allow the recovery of prejudgment interest in the case at bar. Prior to embarking on the jurisprudential voyage which is necessary to resolve this issue, we should begin the inquiry by discussing the scope of our *Erie* powers to make such a determination.

██ Once it is clear that a federal court must apply state law in a case, the court must then determine the content of the state law that is to be applied. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Wright & Miller & Cooper, *Federal Practice and Procedure*, § 4507 (1982). Under prevailing Texas conflicts of laws principles, it has been clear *ab initio* that Texas law should be applied to this litigation (the parties have in fact never disputed this determination). *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Federal courts sitting in diversity cases should not blindly follow state court decisions when the development of the pertinent law or laws casts serious doubt on those prior decisions; rather, federal courts should be sensitive to possible changes in the state law they are bound to apply under *Erie*. *Bernhardt v. Poly-*

*graphic Company of America,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). However, even if a rule of law announced by a state's highest court appears to be anomolous, antiquated or simply unwise in light of comparable federal law or the laws of sister states, it must be followed unless there are very persuasive grounds for believing the state's highest court would no longer adhere to the rule. Wright & Miller & Cooper, *supra,* § 4507, n. 32 and 33, and cases cited therein. In this regard, pertinent recent decisions of the state's intermediate courts must be given proper respect, but they may be disregarded if the federal court is convinced by other persuasive data that the state's highest court would decide the issue differently. *E.g., Shelp v. National Surety Corp.,* 333 F.2d 431 (5th Cir.), *cert. denied,* 379 U.S. 945, 85 S.Ct. 439, 13 L.Ed.2d 543 (1964).

 Under Texas law, prejudgment interest has been awarded as a post-verdict remedy in a variety of actions. Absent statute or contract, the availability of the remedy is based on equitable principles and is used by the courts to compensate a plaintiff for the use of funds to which he is entitled but which have been retained (and presumably used) by a defendant during the pendency of the case. *Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480, 485 and cases cited therein (Tex.1978). To date, these equitable principles have not been applied to wrongful death and personal injury cases. The apparent genesis of this prohibition lies in *Watkins v. Junker,* 90 Tex. 584, 40 S.W. 11 (1897). The rule has been recently reiterated by intermediate appellate courts, but the Texas Supreme Court has granted an application for writ of error on this precise point. *Cavnar v. Quality Control Parking, Inc.,* 678 S.W.2d 548 (Tex.Civ. App.—Houston [14th Dist.] 1984), *appl. for writ granted,* 28 Tex.S.Ct.J. 103 (Nov. 24, 1984).

*Watkins* was a suit arising out of a contract to service rental boats. In dicta, the *Watkins* court stated:

> Interest as damages may be allowed upon unliquidated demands whether they arise out of a breach of contract or out of a tort. (citations omitted) Interest, however, cannot be allowed upon damages arising from assault and battery ... nor for personal injuries and the like. (citations omitted) The reason why interest cannot be given in the class of cases last mentioned is, that the measure of damages is not fixed at any particular time, but the right of recovery may be greater or less at the time of trial than it would have been at the time the injury was inflicted...

*Id.,* 90 Tex. at 587, 40 S.W. 11. For the reasons set forth below, this rationale for prohibiting the recovery of prejudgment interest in death cases has been significantly eroded by subsequent case-law.[5]

 Current Texas law defines prejudgment interest as the interest calculated on the sum payable to the plaintiff from the time of his loss or injury to the date of judgment. *Republic Nat. Bank v. Northwest Nat. Bank,* 578 S.W.2d 109, 116 (Tex. 1979). The right to prejudgment interest does not depend on whether the case sounds in contract or tort. *Hyatt Creek Builders-Engineers Co. v. Board of Regents,* 607 S.W.2d 258, 265 (Tex.Civ.App.— Texarkana 1980, writ dism'd w.o.j.); *Maxey v. Texas Commerce Bank,* 571 S.W.2d 39, 50–51 (Tex.Civ.App.—Amarillo 1978), writ ref'd *per curiam,* 580 S.W.2d 340 (Tex. 1979). The general rule is that prejudgment interest is recoverable as a matter of right when an ascertainable sum of money is determined to have been due and payable at a definite date prior to judgment. *Republic Nat. Bank, supra,* at 116; *Phillips v. Stahl, supra,* at 488; *Miles v. Royal Indemnity Co.,* 589 S.W.2d 725 (Tex.Civ. App.—Corpus Christi 1979, writ ref'd n.r. e.). Stated another way, the proper test

---

**5.** We note in passing that the issue of whether to award prejudgment interest in a personal injury case is not properly before us, and therefore we should not address that issue. Art. III, Sec. 2, U.S. Const.Ann.

for determining whether prejudgment interest may be awarded is whether or not the *measure* of recovery—not necessarily the amount of damages—is fixed by conditions existing at the time of the loss or injury. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 276–277 (5th Cir.1980) (and cases cited therein). In the context of a fire and casualty insurance policy dispute, at least one Texas court has held that a good faith dispute over the precise amount of the sum payable to plaintiff does not foreclose an award of prejudgment interest, even if expert testimony is required to establish the exact monetary amount due. *Fort Worth Lloyds v. Hale*, 405 S.W.2d 639 (Tex.Civ.App.—Amarillo 1966, writ ref'd n.r.e.).

Texas Courts have awarded prejudgment interest in such disparate cases as broken contracts, property damage, breaches of fiduciary duties, injured cattle, and lost good will. *Miner-Dederick Const. Corp. v. Mid-County Rental Service, Inc.*, 603 S.W.2d 193, 200 (Tex.1980) (breach of contract); *Miles v. Royal Indemnity, supra*, at 735 (property damage); *Gabriel v. Snell*, 613 S.W.2d 810 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ) (fiduciary duties); *Panhandle & S.F. Ry. Co. v. Montgomery*, 140 S.W.2d 241 (Tex.Civ.App.—Amarillo 1940, no writ) (injured cattle); and *Ewing v. William L. Foley, Inc.*, 115 Tex. 222, 280 S.W. 499 (1926) (lost good will). The rationale underlying these cases is that the party who breached contractual or fiduciary duties or who damaged property or chattel should not profit from the detention and use of money owed to the plaintiff pending a judicial determination of the plaintiff's rights. This equitable concern is reflected in the *Phillips* opinion, wherein the court discussed the availability of prejudgment interest in cases not governed by statute or contract. As the *Phillips* court noted, Texas courts have not insisted on statutory rigidity in the allowance of prejudgment interest when necessary to permit compensation for the use or detention of one's money. *Phillips, supra*, at 486.

In *Watkins*, the two major components of the court's rationale were that damages in personal injury (and death) cases are unliquidated and that the measure of recovery is not fixed. A review of more recent Texas cases shows that the liquidated/unliquidated dichotomy has virtually evaporated. The emphasis now is upon whether the measure of recovery is fixed and ascertainable at the time the claim arises. (See discussion *supra*.) Moreover, the United States Supreme Court long ago criticized the distinction of unliquidated versus liquidated damages as the basis for awarding interest. *Funkhouser v. J.B. Preston Co.*, 290 U.S. 163, 168, 54 S.Ct. 134, 136, 78 L.Ed. 243 (1933). Nonetheless, Texas courts have continued to rely on the *Watkins* rationale for denying an award of prejudgment interest in wrongful death cases.

The law has evolved to the point where the measure of damages which accrue in a wrongful death action are fixed as of the instant of death. The pain and suffering occurring prior to death and the pecuniary and non-pecuniary losses of the survivors are all essentially determinable under legal methods for measuring such losses as of a date certain. *See Annot.*, 14 A.L.R.2d 485, § 30. While the *amount* of recovery may be unknown prior to return of the verdict, the *measures* of recovery are clear when death occurs. It is extremely difficult to rationally, equitably and morally draw a distinction between (1) the measure of damages for cases involving matters such as lost profits, property values, and injured cattle, and (2) the measure of damages in a death case. This Court is of the opinion that the Texas Supreme Court, when it again faces the question, will in all probability agree that such a distinction is no longer viable.

While an *Erie* court is not to disregard prior state decisions simply because other jurisdictions follow what may appear to be a "better rule," the trends in other jurisdictions are probative data of how the Texas Supreme Court will resolve the instant issue. For example, in the recent landmark case of *Duncan v. Cessna*, 665 S.W.2d 414

(Tex.1984), the court undertook an extensive survey of the pertinent law in other jurisdictions. Concerning prejudgment interest, only five states allowed prejudgment interest (by statute) in tort cases prior to 1965.[6] Between 1965 and 1978, seven states passed prejudgment interest statutes[7], and since that time, statutes have been enacted in twelve more states.[8] Court decisions have extended prejudgment interest to tort cases in New Jersey and Pennsylvania. *E.g., Busik v. Levine,* 63 N.J. 351, 307 A.2d 571, *app. dism'd,* 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). In several of these twenty-six jurisdictions, the award of prejudgment is discretionary. It is the general rule in the admiralty jurisdiction that the court may exercise its discretion to award prejudgment interest even on unliquidated claims of any type. *E.g., Doucet v. Wheless Drilling Co.,* 467 F.2d 336 (5th Cir.1972). Prejudgment interest is generally awarded on recoveries of back pay in Title VII discrimination cases. *E.g., Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211 (5th Cir. 1974), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). Finally, the Fifth Circuit recently held that prejudgment interest may be properly awarded in a death case brought under the Warsaw Convention. *Domangue v. Eastern Airlines, Inc.,* 722 F.2d 256 (5th Cir.1984).

The *Domangue* court noted that two important objectives leading to the modification of the Warsaw Convention were to allow victims a more adequate recovery and to ensure a speedy disposition of claims. *Id.,* at 263. That court went on to hold that prejudgment interest was permissible under the Convention, stating that "[w]e are also influenced by the inequity of Eastern Airlines benefitting from the length of time between the crash and a final judgment in this case, to the detriment of decedents' survivors." *Id.,* at 263–264. These same concerns should be considered in determining the equitable powers of Texas courts to award prejudgment interest in wrongful death cases.

The Court is not unmindful of cases such as *Life Ins. Co. of Virginia v. Murray Investment Co.,* 646 F.2d 224 (5th Cir. 1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982), which arguably support the proposition that prejudgment interest is not properly awarded in a death case. *Life Ins. v. Murray* is not really on point, however, since it involved causes for fraud and breach of contract. Further, the discussion found in footnote 3 of the *Murray* opinion merely summarizes certain general principles discussed above. In any event, while there may be some persuasive arguments against changing the current rule in Texas, these arguments appear to go against the clear trends in the laws both of this state and of other jurisdictions as discussed above.

■ Based on all the foregoing analysis, the Court finds and concludes that there is ample persuasive data to support the proposition that the Texas Supreme Court, when it again faces the issue, will hold that prejudgment interest may be awarded in a wrongful death case, based on the courts' equitable powers. Under the

---

6. COLO.REV.STAT. § 13–21–101 (enacted 1935); LA.REV.STAT.ANN. § 13–4203 (enacted 1916); MASS.ANN.LAWS Ch. 231 § 6B, supp. § 11 (enacted 1946); N.H.REV.STAT.ANN. § 524:1–b (enacted 1957); R.I.GEN.LAWS § 9.21–10 (enacted 1958).

7. ALASKA STAT. §§ 09.50.270; 45.45.010 (enacted 1968); ME.REV.STAT.ANN. tit. 14 § 1602 (enacted 1969); MICH.COMP.LAWS § 600.6013 (enacted 1965); N.Y. ESTATES POWER & TRUST LAW § 5–4.3 (McKinney enacted 1967); OKLA.STAT. tit. 12, § 727(2) (enacted 1971); UTAH CODE ANN. § 15–1–4; 7–8–27–44 (enacted 1975).

8. CAL.CIVIL CODE § 3291 (enacted 1982); CONN.GEN.STAT. § 37–3a (enacted 1981); HAWAII REV.STAT. § 636–16 (enacted 1979); IOWA CODE § 535.3 (enacted 1980); MD.CTS. & JUD.PROC.CODE ANN. § 11–301 (enacted 1980); NEV.REV.STAT. § 1981); OHIO REV. CODE ANN. § 1343.03 (Page enacted 1982); TENN.CODE ANN. § 47–14–123 (enacted 1979); VA.CODE 8.01–382 (enacted 1979); W.VA.CODE § 56–3–31 (enacted 1981); WIS.STAT. § 807.01 (enacted 1980).

*Erie* doctrine, the Court holds that this ruling governs the instant case.

■ We next turn to the question of whether prejudgment interest should be awarded here. In the Court's view, the progress of this case is a perfect example of the inequities noted in the *Domangue* opinion. This is not only a case which should have settled prior to trial, it actually *had* settled in principle until Stainless caused the settlement proceedings to derail. The evidence heard at trial amply supports findings of liability for both actual and punitive damages on the part of Stainless. Nonetheless, Stainless has at times persisted in espousing untenable positions, thereby causing unnecessary and costly delays in the resolution of this case. Meanwhile, the Plaintiffs have been denied the use of funds to which they are entitled. The Court is convinced that the equities of the case cry out for the imposition of prejudgment interest.

The Texas courts are permitted to exercise discretion in awarding prejudgment interest at either the statutory rate of 6% *per annum* or at a higher rate. Awards of 9% prejudgment interest have been expressly approved by Texas courts and by the Fifth Circuit (applying Texas law). *Dallas-Fort Worth Regional Airport Bd. v. Combustion Equipment Assoc., Inc.,* 623 F.2d 1032, 1042 and cases cited therein (5th Cir. 1980); *Boehringer Mannheim Diagnostics v. Pan Am., etc.,* 531 F.Supp. 344, 354 (S.D.Tex.1981). The Court exercises its discretion to award 9% prejudgment interest from December 7, 1982, the date of the losses, to the date judgment is entered.

■ An attorney *ad litem* was appointed to represent the interest of the minors. Extensive settlement negotiations were undertaken by the parties which resulted in fair and reasonable settlements with De-

fendants Harris and World Wide. The activities of the *ad litem* were an integral component of these successful negotiations. Moreover, the *ad litem* was very active in the abortive settlement proceedings with Stainless. Mr. Russell McMains, whose appointment was jointly requested by the Plaintiffs and at least two of the Defendants [9], is a leading expert on certain legal issues which were crucial to effective representation of the minors' interests. Because of the fruitless settlement negotiations with Stainless, the Court exercised its discretion to permit Mr. McMains to participate in the trial and certain trial preparations so as to fully protect the minor Plaintiffs. The *ad litem* obtained excellent overall results in his representation of the children.

Mr. McMains testified that he expended over 500 hours of time in representing the minors. These hours include estimated time which will be spent in finalizing the necessary documents on behalf of the minors. The Court finds this time to be a reasonable and necessary expenditure of attorney work-time in light of the relative complexities of the case. Further, Mr. McMains suggests that his time is worth $350.00 per hour. While this is a rate higher than the usual award for *ad litem* representation, the *ad litem's* duties herein were necessarily greater than those of the ordinary case. The number of apparent conflicting interests was such that the Court could have properly appointed more than one *ad litem*, which would have effectively resulted in the combined award of hourly rates at a rate well in excess of $350.00 per hour. Based on these considerations together with a review of the evidence presented at the hearing on attorney fees, the Court finds and concludes that Mr. McMains should be awarded $175,-

---

**9.** During a post-verdict hearing held at Stainless's request concerning the proper amount of attorney fees to be awarded to the *ad litem*, counsel for Stainless appeared to object to the appointment of Mr. McMains. By the conclusion of the hearing, this apparent objection had evolved into a study in ambivalence and ambiguity. If Stainless wanted to object to the appointment, it could have done so at any time during the eleven months between the Order of March 28, 1984 appointing Mr. McMains and the conclusion of the trial. Any such objection must therefore be deemed to have been waived. The only objection of Stainless properly before us is as to the amount of fees requested by the *ad litem*.

000.00 in *ad litem* fees, which is the product of 500 hours times $350.00.[10] In addition, the *ad litem* is entitled to recover $7,122.40 in necessary expenses.

We must apportion recovery of the *ad litem* fees and expenses among the various Defendants. The *ad litem* fees recoverable against World Wide have been paid and are not included in the amounts at issue. The Court finds, based in part on certain stipulations, that $100,000.00 of the *ad litem* fees had accrued as of the time the Harris settlements were consummated. A significant portion of that amount is attributable to the *ad litem's* activities undertaken to protect the minors' interests vis-a-vis the other parties to the litigation, including Stainless. Therefore, the $100,000.00 should be allocated between Harris and Stainless. These two Defendants should each pay half of these amounts. As to the remaining $75,000.00, Stainless should bear that entire amount. The Court concludes that Harris shall be responsible for $50,000.00 in attorney *ad litem* fees and Stainless shall be responsible for $125,000.00 in *ad litem* fees. The Court exercises its equitable powers to assess the $7,122.40 in *ad litem* expenses as charges in the nature of taxable costs against Stainless.

 Stainless has filed a motion to set the indemnity issues for trial. As noted earlier, the Court has ruled that Stainless cannot recover indemnity from World Wide for any losses flowing from Stainless's sole negligence (or fault) or from any concurrent negligence of Stainless and World Wide. We left open the narrow question of whether Stainless could enforce the indemnity provision resulting from the (sole) negligence of World Wide, and that any such indemnity issues should be separately tried, if necessary. 596 F.Supp., at 932. There is no such necessity to raise these issues as the great weight and preponderance of the evidence and the jury's findings show that Stainless bears 100% of the culpability in this litigation. Further, no evidence has been presented and no factual allegations have been made on which a reasonable finder of fact could impute any acts of World Wide to Stainless (e.g. on a respondeat superior basis). After thoroughly reviewing the record, the Court can conceive of no manner in which the losses herein could be attributed to the sole negligence (or fault) of World Wide. It necessarily follows from the foregoing discussion that Stainless is foreclosed from obtaining indemnity from World Wide. The motion to set trial on indemnity issues should be denied.

 Finally, Stainless has filed a motion to stay execution of judgment on appeal. The only bases for the motion are that Stainless intends to appeal the case and that Stainless is financially unable to post an adequate supersedeas bond. The financial standing of a defendant is inadmissible as evidence in determining the amount of compensatory damages to be awarded. *Geddes v. United Financial Group*, 559 F.2d 557 (9th Cir.1977); *Parkins v. Brown*, 241 F.2d 367, 368 n. 2 (5th Cir.1957). Financial ability is simply immaterial to the issue of properly-recoverable damages. By analogy, it is, in and of itself, immaterial to the question of whether a judgment should be stayed. Stainless has not made or offered to make the requisite showings under the explicit provisions of Rule 62, F.R.Civ.P., which governs a stay of proceedings to enforce a judgment. The motion to stay must be denied. If Stainless fails to post a supersedeas bond in an amount sufficient to cover the entire amount of the judgment, including interest, costs, and damages for delay, execution may issue. *See Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189 (5th Cir.1979).

It is hereby ORDERED that Defendant Stainless's motion for judgment n.o.v. be

---

**10.** Since this award is not predicated on a federal statute authorizing attorney fees, we need not apply the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974).

Under Texas law, we have discretion to award reasonable and necessary attorney fees to an *ad litem*.

DENIED; that Defendant Stainless's motion for remittitur be DENIED; that Defendant Stainless's motion for new trial be GRANTED in part and DENIED in part to the extent set forth above; that Defendant Stainless's motion to set trial on indemnity issues be DENIED; that Defendant Stainless's motion to stay execution of judgment be DENIED; that Plaintiffs' motion for partial new trial and severance be GRANTED and that the claims of the estates of the five decedents be SEVERED from all other claims herein; that Plaintiffs' motion for certification pursuant to Rule 54(b) be GRANTED; that Plaintiffs' motion for entry of judgment be GRANTED; and, that Defendant/cross-Plaintiff World Wide Towers' motion for judgment n.o.v. be DENIED.

A judgment will be entered in accordance with this Memorandum and Order.